ARROTT ST.-P. MILLS CO. v. WAY MFG. CO.

143  435
195  598

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
NO. 3 OF PHILADELPHIA COUNTY.

Argued March 30, 1891—Decided October 5, 1891.

(*a*) The owner of a factory building leased by parol a portion thereof to
a partnership, and died, after having conveyed the entire property to a
corporation, subject to subsisting leases.   The corporation subsequently
leased, also by parol, other portions to partnerships composed substan-
tially of the same members as the original lessees, each firm succeeding
to the liabilities of its predecessor in the lettings.

(*b*) The first holdings continued after the subsequent ones were acquired,
the additional lettings being made upon the same terms as to the period
of duration as the original; and after each additional letting bills were
rendered monthly to the lessees, for the aggregate rentals due upon all
the holdings, as if upon a single letting of the whole building:

1. In assumpsit by the corporation for a balance of rentals unpaid, the
interest of the original lessor in the first letting was one of the things
or contracts in action; and such lessor being dead, one of the defendant
lessees, who made the first contract with him, was incompetent to tes-
tify to the terms of that contract: § 5, (*e*), act of May 23, 1887, P. L.
158.*

2. Both parties claimed that such contract was made, and the only ques-
tion was as to what were its terms.   In such case, it was not error to ex-
clude offers of the defendants to prove the custom of the original lessor
in renting the building, his declarations as to his custom, or the usage
of the plaintiff corporation as to renting in like cases after renting to
the defendants.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM
and MITCHELL, JJ.

No. 202 July Term 1890, Sup. Ct.; court below, number and
term not shown.

On April 15, 1889, the Arrott Steam-Power Mills Company,
a corporation, brought assumpsit against the Way Manufactur-
ing Company, Limited.   Issue.

At the trial, on April 7, 1890, the plaintiff introduced testi
mony tending to show, as was claimed:

*See act of June 11, 1891, P. L. 287.

That, on April 1, 1883, William Arrott, the owner of a factory building in Philadelphia, made a parol lease of the fifth floor of the same to J. Howard Way, Pennington Way, A. T. Evanson and Hunter Evanson, trading as J. H. Way, Brother & Co., at an annual rental of $1,500, payable monthly.

That, on July 9, 1883, the Arrott Steam-Power Mills Company, the plaintiff herein, was duly incorporated under the act of April 29, 1874, P. L. 73 ; and that on or about July 13, 1882, said William Arrott sold and conveyed the factory buildings to the said company, subject to all subsisting leases.

That the plaintiff company, by William Arrott, its president, leased by parol to the same firm of J. H. Way, Brother & Co., on April 15, 1885, one half the fourth floor of the factory building, at an annual rental of $1,000, payable monthly ; on October 15, 1885, a warehouse connected with said building at the annual rental of $250, payable monthly ; and, on January 20, 1886, the other half of the fourth floor of the building, at an annual rental of $1,000, payable monthly.

That William Arrott died on September 11, 1886, and his son, William H. Arrott, succeeded him as president of the plaintiff company ; that, prior to November, 1886, the firm of J. H. Way, Brother & Co. dissolved, and was succeeded by the firm of J. H. Way & Brother, composed of J. Howard Way and Pennington Way, the latter firm assuming all the liabilities of its predecessor as to existing leases. That, on November 6, 1886, the plaintiff company, by William H. Arrott its president, leased to the firm of J. H. Way & Brother the third floor of the factory building, at the annual rental of $2,000 per annum, payable monthly.

That in July, 1888, the Way Manufacturing Co., Limited, the defendant firm, was organized, composed of J. Howard Way, Pennington Way, A. T. Evanson and Hunter Evanson, the same individuals formerly constituting the firm of J. H. Way, Brother & Co., and this firm assumed the liabilities of their predecessor upon the leases then subsisting.

That on January 31, 1889, the defendant firm, after having given one month's notice of their intention so to do, vacated the premises occupied by them. The plaintiff company afterward brought this suit, claiming to recover $1,178.71, as a balance of rents due for February and March, 1889, and certain unsettled balances for gas and power supplied.

J. Howard Way being called as a witness in behalf of the defendant firm, his counsel proposed to prove by him a conversation which took place between William Arrott, deceased, and the witness in 1883, as to the renting of the fifth floor in the factory.  Objected to.

By the court: Objection overruled.

The witness then testified, in substance, that he was the member of the firms occupying the premises who attended to the arrangements with the Arrotts for the lettings; that, referring to a conversation which occurred in regard to the renting the additional floor, the witness remembered the defendant firm was to take it at the rental proposed on the terms of the original letting in 1883, and that the terms of the original letting on April 1, 1883, were settled in a conversation between the witness and William Arrott.

Mr. Bispham: " Q. State what passed at that conversation? " Objected to.

By the court: Objection overruled; exception.[2]

" Q. State what those terms were under which you held the property you rented from William Arrott, Sr.; state the terms of your tenancy, and what conversation you had with Mr. William Arrott? "  Objected to.

By the court: Objection overruled; exception.[3]

The witness then testified that in negotiating with William Arrott, deceased, in March, 1883, prior to the renting of April 1st, he told Arrott he wanted a lease for two years, and Arrott said: " I don't give leases.  I never have a lease; I want my tenants to be perfectly satisfied.  If they are not satisfied I want them to get right out; and I want them in there in such a shape that if I am not satisfied with them I can make them get right out; . . . . . I have them in there on those terms, and therefore I want them in there on this monthly rental. "  The witness then testified, in substance, that the defendant firm rented that room, the fifth floor, at $125 per month, and on that original letting rented the others afterward: " I don't recollect any conversation at the other rentals, any further than stating we would take the rooms or such portions of the rooms at the usual way of renting."

Mr. Bispham: " Q. Then, I understand you to say that the original letting was from month to month? "  Objected to.

Charge of Court below.

By the court: Objection overruled; exception.[4]

"Q. My understanding of what you said was, that the original letting in 1883 was from month to month, and the additional rooms were taken upon the same terms? A. Yes, sir. Q. You gave one month's notice to quit? A. We did, the company did."

It was shown, further, that bills for the rental, etc., were rendered monthly, and that after each additional room or space was taken, the bill rendered was for the rent, etc., of all together at the aggregate of the rents agreed to be paid.

In rebuttal, the plaintiff company made the following offers:

"Counsel for plaintiff offers to show in rebuttal Mr. William Arrott's custom in the way of renting."

By the court: Offer overruled; exception.[5]

"Counsel for plaintiff offers to call Mr. Murphy to show what Mr. William Arrott told him as to the renting to these parties."

By the court: Offer overruled; exception.[6]

William H. Arrott, called for plaintiff: "Q. What is the usage of the Arrott Steam-Power Mills Company, as to renting in like cases since these gentlemen first went in there?" Objected to.

By the court: Objection sustained; exception.[7]

At the close of the testimony, the court, FINLETTER, P. J., charged the jury in part as follows:

In this case, the plaintiff claims that the renting was from year to year and by the year. The defence have said that it was a letting by the month.

If this had been a single house or a single room which had been rented, the present plaintiff and the present defendants would have been bound by the conversation such as it was at the time the agreement was made for the last room in November, 1886; but, inasmuch as the tenants had been in possession of the premises or of several rooms anterior to that, and as this was a combination of the rentals, at least a fixing of the time that the rent should run from, the fact that the defendants occupied them before becomes a very important thing; because, if they went in under William Arrott at a monthly renting, then that contract continued, no matter who became the owner

of the premises, until a contrary or a different contract was entered into between the parties. [So, it is very important that you should at the very outset determine what the contract between William Arrott, deceased, and these parties was; because, as it referred to a large proportion of the premises, it must of course be considered that it in some way entered into the arrangement which was made in November, 1886.] [8]

If you should be of the opinion, from the testimony, that William Arrott rented to these defendants by the month, then you will consider the conversation which was had between the parties when this additional renting and this contract was made between the present plaintiff and the defendants.

In all matters of this kind, you must gather what the parties meant, in any act they did, from the conversation they had at the time. Now the defendant (Mr. Way) has sworn that he specifically called the attention of the present plaintiff to the fact that he took the additional rooms and entered into this second arrangement upon the same terms that he had with the father, William Arrott, deceased. If you are satisfied that that conversation was had, then it raises the question, What were the terms upon which these defendants held from William Arrott?

Mr. Arrott is dead, and of course there is no one to contradict the defendant in relation to the terms upon which he held under William Arrott. There is, however, this to say about it, that William Arrott's son was with his father employed in business in some way from the time these defendants went in. The secretary of the present plaintiff was also in William Arrott's employment, and has continued in that employment and business, holding the same relation to the son as he had held to the father, private secretary, and also being secretary and treasurer of this company.

[Under such circumstances, it would be very natural to suppose that William H. Arrott had some understanding of the terms under which the defendants held under his father. At all events, if that conversation was had, it was his duty at that time either to ascertain what the terms were, or, not having done that, the presumption would naturally be that he understood what they were.] [9]  It leaves but the single question for you; first, to determine under what terms William Arrott had

Arguments.

rented, and, secondly, whether the additional rooms were taken and the additional agreement as to time made upon the basis of the letting by which the defendants held under William Arrott.

There is this to say : That whilst a letting ordinarily is from year to year, that might not be the proper method by which a whole factory would be rented, or the different parts of a large establishment like this. It might very well be in the interest of the owner of a large factory, who had many or several tenants, and to the interest of his tenants, that he should hold control over every one who came there to rent; that is, to be able to put out an unpleasant and disagreeable tenant whenever the month expired; because, you can understand that in a place like this one tenant might make himself extremely disagreeable, not only to the landlord, but to all who occupied the place, and that might be of such a character as to make the rest of the mill or the proper use of the rest of the mill by itself useless or worthless. [So that, whilst ordinarily a renting, if nothing is said, is from year to year, it might very well be that the proper way to let out a large factory like this would be to let it out in such a manner as that the landlord would have reasonable control over all the tenants, and be able to put out an objectionable man whenever the necessity arose.] [10]

However, it is your province to decide between these two parties. They might have settled the matter by a very easy understanding at the time this last contract was made, but not having done so and disagreeing about it, you must determine this case upon the evidence that has been produced.

—The jury returned a verdict for the plaintiff for $222.57. A rule for a new trial having been discharged and judgment entered, the plaintiff took this appeal, assigning for error :

2–4. The admission of the defendants' offers.[2 to 4]

5–7. The refusal of the plaintiff's offers.[5 to 7]

8–10. The portions of the charge embraced in [ ] [8 to 10]

*Mr. S. Davis Page* and *Mr. Richard P. White* (with them *Mr. Howard W. Page*), for the appellant.

Counsel cited : (2–4) § 5, (e), act of May 23, 1887, P. L. 158; Karns v. Tanner, 66 Pa. 297, 305; Foster v. Collner, 107

Opinion of the Court.

Pa. 305, 311; Duffield v. Hue, 129 Pa. 94.  (5–7) Amer. Life
Ins. Co. v. Shultz, 82 Pa. 47; Entwisle v. Mulligan, 22 W. N.
126, 127; Hunt's App., 100 Pa. 595, 596.  (8–10) Shaver v.
McCarthy, 110 Pa. 339, 347; Fawcett v. Fawcett, 95 Pa. 376,
378; Reber v. Herring, 115 Pa. 599.

*Mr. Geo. Tucker Bispham* (with him *Mr. A. H. Wintersteen*),
for the appellees.

Counsel urged: The contract in suit was made in November,
1886, and William Arrott, who had died long before, could not
be the assignor of a chose in action within the meaning of the
statute: Duffield v. Hue, 129 Pa. 94, 107.   All the contracts
except the first were made with the plaintiff corporation; con-
sequently, the other party to the contract in action was not
deceased, and there was no question at all of the exclusion of
Way's testimony under the statute.

OPINION, MR. JUSTICE STERRETT:

The first specification of error was abandoned.

The main question presented by the second to the fourth
specifications, inclusive, is as to the competency of the witness
John H. Way, a member of the company defendant, and also
of the companies which preceded it, to prove conversations with
William Arrott, deceased, the lessor, in relation to the terms
of the first lease made in April, 1883, etc.   The facts bearing
on the question are somewhat complicated.   Some of them are
embodied in the specifications, and others necessary to an un-
derstanding of the question are found in the history of the
case.

It was claimed by plaintiff company, and evidence was intro-
duced tending to prove that in April, 1883, William Arrott,
the then owner of the Ontario Mills building, leased the fifth
floor thereof to J. H. Way, Brother & Co., composed of the
witness John H. Way, Pennington Way, A. T. Evanson, and
Hunter Evanson, at an annual rent of one thousand five hun-
dred dollars, payable monthly.   In July following, plaintiff
company was organized under the act of 1874, and a few days
thereafter William Arrott conveyed said building and appur-
tenances to the new corporation, subject to all existing leases.
In April, 1885, plaintiff company, acting through its president

Opinion of the Court.

and agent, William Arrott, leased to said firm, composed of same persons, one half of the fifth floor of said building, at an annual rent of one thousand dollars, payable monthly, and in January, 1886, leased to it the remaining half of same floor on same terms. In October, 1885, the plaintiff company, still acting through its said president and agent, leased to same firm a warehouse connected with said building, at an annual rent of two hundred and fifty dollars, payable monthly. On September 11, 1886, William Arrott died, and his son, William H. Arrott, succeeded him as president of the company plaintiff. Between January and November, 1886, the said firm, J. H. Way, Brother & Co., dissolved, and was succeeded by J. H. Way & Brother, composed of John H. Way, the witness, and Pennington Way. In July, 1888, this latter firm was succeeded by the defendant, the Way Manufacturing Company, Limited, composed of the four persons who constituted the first-mentioned firm of J. H. Way, Brother & Co. As each of these organizations succeeded the other, it assumed all the liabilities of its predecessor on existing leases of parts of the Ontario Mills building. In November, 1886, the plaintiff company, acting through its president and agent, William H. Arrott, leased to J. H. Way & Brother, above named, the third floor of said building, at two thousand dollars per annum, payable monthly. On January 31, 1888, after having given a month's notice of its intention to do so, the defendant company vacated the leased premises. In doing this, it acted on the assumption that the leasing above mentioned was from month to month, and not an annual leasing, though the rent had been, upon each increase of the space taken, so adjusted that it ran from the first of the month then last past, at the aggregate annual rate agreed upon, amounting since November 6, 1886, to $5,750 per annum, payable monthly in sums of $479.16⅔.

The alleged contracts, above referred to, were altogether verbal; there was nothing in writing. The main question in dispute between the parties was whether the lettings were from year to year, as contended by the plaintiff, or from month to month, as maintained by the defendant. If it was the former, the defendant was liable for the rent until the end of the year; if the latter, it had a right to remove from the premises on the last day of January, as it did, upon giving one month's notice.

Opinion of the Court.

In view of what has been said, it was important, as the learned judge observed in his charge, to determine what was the contract between William Arrott, deceased, and his lessees. If it could be shown to the satisfaction of the jury that it was an annual lease, and not a monthly letting of the fifth floor, it would go very far towards settling the question as to the subsequent contracts. William Arrott, it will be remembered, was the sole lessor in the first contract, and his interest in that lease subsequently passed to the company plaintiff, and is one of the things or contracts in this action. The witness John H. Way, one of the original lessees, and by his membership of the company defendant a party to the record, was permitted to testify to conversations with the lessor, since deceased, for the avowed purpose of proving that the lease was not by the year, but from month to month. This appears to bring the case directly within the letter as well as the spirit of the proviso to the act of 1887, § 5, (*e*), P. L. 159: " Nor, where any party to a thing or contract in action is dead, . . . . and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record, who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract, or any other person whose interest shall be adverse to the said right of such deceased . . . . . party, be a competent witness to any matter occurring before the death of said party." Nor was he a competent witness to prove the first lease for the purpose of showing the terms of the subsequent leases, made by William Arrott as president of the company.

There was no error in excluding the offers of evidence referred to in the fifth to the seventh specifications. As to the leasing in question, it was claimed by both parties that there was a verbal contract, and the only question was, what were the terms of that contract? Any inquiry as to the custom of William Arrott in renting, or as to what he may have said to the witness Murphy, or as to the usage of plaintiff company in like cases, was irrelevant. For aught that appears, the witness Murphy was a stranger to the transaction, and what William Arrott may have said to him was immaterial. There is nothing in the remaining specifications that requires special notice.

Judgment reversed, and a venire facias de novo awarded.