BRUNDY, RESPONDENT, *v.* CANBY ET AL., APPELLANTS.

(No. 3,490.)

(Submitted February 16, 1915. Decided April 8, 1915.)

[148 Pac. 315.]

*Cancellation and Reformation of Instruments—Mistake of Law—*
*Complaint—Sufficiency—Laches—Placing Party in Statu Quo*
*—Estoppel—Findings—Descent and Distribution—Heirship.*

Heirship—Statutes.

1. *Held,* under subdivisions 2 and 4 of section 4820, Revised Codes,
that to enable nieces or nephews to share an estate with a surviving
wife, there must be a surviving brother or sister of the decedent and
neither father nor mother.

Cancellation and Reformation of Instruments—Complaint—Mutual Mistake
—Sufficiency.

2. In a suit for the reformation of one and the cancellation of an-
other instrument because executed under the influence of mutual mis-
take of the parties, the complaint contained a paragraph setting forth
that plaintiff did not know whether defendants were honestly mistaken,
that she was led by their conduct to believe, and did believe, that they
were mistaken, but that, if they learned otherwise, they concealed the
knowledge and information from her, *etc. Held,* that the latter aver-
ment did not render the pleading of mutual mistake ineffective.

Same—Mistake of Law—Equity.

3. The rule that a court of equity will grant relief on the ground
of a mutual mistake when, in view of all the circumstances, to deny
it would permit one party to suffer a gross wrong at the hands of the
other, has application to a case involving a mutual mistake of law,
accurate legal knowledge not being imputable to all the world.

Same—Mutual Mistake—Evidence—Sufficiency.

4. Evidence *held* sufficient to warrant a finding of mutual mistake in
the execution of the instruments in controversy.

Same—Laches—Presumptions.

5. Though laches may arise from an unexplained delay short of the
period fixed by the statute of limitations, it will not be presumed from
such a delay alone; unless it is made to appear affirmatively that un-
usual circumstances exist which, on account of such delay, render the
proceeding inequitable, relief cannot be denied.

Same—Laches—Complaint.

6. A mere delay in commencing suit, short of the period of limita-
tion, need not be excused in the complaint.

Same—Laches—Doctrine Inapplicable, When.

7. The application of the doctrine of laches *held* inapplicable, where
the circumstances were such as to excuse a failure to discover a mistake
of law, and the situation of the defendants had not changed to their
prejudice.

Same—Placing Party *in Statu Quo*—Complaint.

8. Where plaintiff in her complaint in a suit seeking cancellation
stated that she received nothing of value from the defendants, an alle-
gation offering to place them *in statu quo* was unnecessary.

Same—When Restoration not Required.

9. Persons who were mistakenly deemed by plaintiff to have an interest in the property of her deceased husband as heirs and as such joined in a contract of sale thereof, gave nothing of value which it was her duty to restore, and assumed no liabilities as grantors or guarantors, and hence their situation was not so changed by the transaction as to render a decree in favor of plaintiff inequitable without requiring them to be placed *in statu quo.*

Same—Restoration of Consideration—When Unnecessary.

10. Plaintiff, in a suit for the cancellation of an instrument reciting a consideration of one dollar, was not required to allege and prove an offer to return such consideration, where the decree in plaintiff's favor rightfully required the defendant to account to the former for a large sum of money.

Same—Restoration of Nominal Consideration—"*De Minimis*" Doctrine.

11. Under the doctrine of *de minimis non curat lex*, a court of equity would not be justified in denying cancellation of an instrument involving valuable property rights, merely because the return of the nominal consideration of one dollar was not formally offered.

Same—Estoppel—Retention of Benefits.

12. Plaintiff, who was the sole heir of her deceased husband but mistakenly believed others to be heirs, and under such belief, jointly with them, executed an instrument of sale whereby only one-half of the purchase price was to be paid to her, whereas she was entitled to the whole thereof, was not estopped to seek cancellation of the instrument by reason of her receipt and retention of one-half of the first installment of the purchase price.

Same—Estoppel by Ratification—What Does not Constitute.

13. An act done in ignorance of one's rights or under the influence of the mistake which induced the contract sought to be canceled, does not constitute an estoppel by ratification.

Findings—Error—When Immaterial.

14. Where findings excepted to are unnecessary to a decision, error in making them will not work a reversal of the decree.

Same—Refusal—When not Error.

15. Refusal to make findings upon matters not at issue is not error.

Same.

16. Where the court found that a contract had been entered into by the mutual mistake of the parties, a requested finding that fraud had not been practiced upon plaintiff was properly refused.

[As to causes and proceedings for reformation of instruments, see notes in 65 Am. St. Rep. 481; 117 Am. St. Rep. 227. As to cancellation of instrument for negligent mistake of one party, see note in Ann. Cas. 1913A, 432. As to refusal of relief because of laches, see notes in 54 Am. Dec. 130; 2 Am. St. Rep. 795; 23 Am. St. Rep. 148. As to enforcement in equity of stale claims, see note in Ann. Cas. 1914B, 314.]

*Appeal from District Court, Silver Bow County; John B. McClernan, Judge.*

ACTION by Sally A. Brundy against Benjamin H. Canby and others. Judgment for plaintiff, and defendants appeal from it and from an order denying a new trial. Affirmed.

*Messrs. H. G. & S. H. McIntire,* for Appellants, submitted a brief and argued the cause orally.

*Consideration:* It is alleged that plaintiff received no consideration for the contract, and as a corollary to that postulate, that there is nothing for her to do to place the parties *in statu quo* as a condition precedent for a cancellation or rescission of the contract. The fact that the joining with claimants in the contracts was not of as great value as was at first supposed, affects the adequacy of the consideration but not its sufficiency in point of law. It is not necessary that the consideration be adequate in value in order to support a contract. (*Kelly* v. *Lynch,* 22 Cal. 661, 665.) Degree of consideration is not material so long as there is some advantage to promisor or injury to promisee. (*Comstock* v. *Breed,* 12 Cal. 286, 288.) Disproportion in value does not affect. (*Frey* v. *Clifford,* 44 Cal. 335, 341.) Finding of want of consideration not shown when parties to deed become sureties on note, valuable consideration appearing by their executing note. (*Grigsby* v. *Schwarz,* 82 Cal. 278, 282, 22 Pac. 1041.) "Any act done by promisee at request of promisor by which former sustains any loss, trouble or inconvenience, constitutes sufficient consideration for promise, although latter obtains no advantage and with respect to extent of such loss, trouble or inconvenience it is immaterial that it is of the most trifling description, provided it be not utterly worthless in fact and in law." (*Clark* v. *Sigourney,* 17 Conn. 511; *Stocking* v. *Sage,* 1 Conn. 519; *Morley* v. *Boothby,* 3 Bing. 107, 112, 11 Eng. C. L. 53, 10 Moore, 395, 130 Eng. Reprint, 455; *Willatts* v. *Kennedy,* 8 Bing. 5, 10, 21 Eng. C. L. 200, 131 Eng. Reprint, 301; *Jones* v. *Ashburnham,* 4 East, 455, 463, 2 H. Black. 312, 102 Eng. Reprint, 905.) And even if Mrs. Brundy's promise had been gratuitous, the rule would not be changed. (*Lasar* v. *Johnson,* 125 Cal. 549, 553, 58 Pac. 161; *Cottage Street M. E. Church* v. *Kendall,* 121 Mass. 528, 23 Am. Rep. 286.)

"*Mutual promises,* one to other, sufficient consideration for promise of each, and contract is valid and binding." (*West*

v. *Crawford,* 80 Cal. 19, 32, 21 Pac. 1123; *Murphy* v. *Rooney,* 45 Cal. 78, 79; *Christian College* v. *Hendley,* 49 Cal. 347, 350; *Mound City L. & W. Assn.* v. *Slauson,* 65 Cal. 425, 427, 4 Pac. 396; *Funk* v. *Hough,* 29 Ill. 145; *Twin Creek etc. Road Co.* v. *Lancaster,* 79 Ky. 552; *Amherst Academy* v. *Cowls,* 23 Mass. (6 Pick.) 427, 17 Am. Dec. 387; *George* v. *Harris,* 4 N. H. 533, 17 Am. Dec. 446; *Briggs* v. *Tillotson,* 8 Johns. (N. Y.) 304, 306.) In *Street* v. *Galt,* 136 App. Div. 724, 121 N. Y. Supp. 514, it is held that a promise is based upon a good consideration if the promisee does anything legal which he was not bound to do.

*Rescission:* This being a suit to rescind or cancel a contract, we now inquire what the essential prerequisites of such an action are. Section 5065, Revised Codes, requires: (1) Prompt action on the part of the party seeking to rescind; (2) Restoration of everything of value received under the contract, *i. e.,* the placing of the parties *in statu quo.* These rules are but a crystallization of the general law on the subject, and they have been frequently referred to and applied by this court. (*Streicher* v. *Murray,* 36 Mont. 45, 59, 92 Pac. 36; *Turk* v. *Rudman,* 42 Mont. 1, 111 Pac. 739; *Ott* v. *Pace,* 43 Mont. 82, 115 Pac. 37; *Fratt* v. *Daniels-Jones Co.,* 47 Mont. 487, 133 Pac. 700.) In the present case there has not been the prompt action which statute and the general law require. (See *Wood* v. *Carpenter,* 101 U. S. 135, 25 L. Ed. 807.) True, this case applies the doctrine to the statute of limitations, but it has been frequently held to be equally applicable to equitable actions, and to the principle of negligent delay or laches. (*Cutter* v. *Iowa Water Co.,* 128 Fed. 505, 508; *Melms* v. *Pabst Brewing Co.,* 93 Wis. 153, 57 Am. St. Rep. 899, 66 N. W. 518, 524, 525; *Kavanaugh* v. *Flavin,* 35 Mont. 133, 88 Pac. 764; *Bower* v. *Stein,* 177 Fed. 673, 101 C. C. A. 299; *Shain* v. *Sresovich,* 104 Cal. 402, 38 Pac. 51.)

The claim is made that the contract in question was entered into because of a mistake of what the succession law is in regard to persons in the relationship of the defendant claimants. Failure on the part of Allen, the administrator, and plaintiff, to ascertain what, if any, rights the claimants had in the estate

between Allen's appointment in February and the transaction in July, constitutes want of ordinary care; in other words, is negligence both on the part of Allen, and, as the agent's negligence is imputable to the principal (2 Pomeroy's Eq. Jurisp., 2d ed., sec. 676), of the plaintiff. Negligence is one of the familiar grounds of estoppel. (Bigelow on Estoppel, p. 579; *Gaylord* v. *Van Loan,* 15 Wend. (N. Y.) 308; *Dezell* v. *Odell,* 3 Hill (N. Y.), 215, 38 Am. Dec. 628; *Hathaway* v. *Payne,* 34 N. Y. 92.) "Actual knowledge of the facts is not necessary if the party estopped was in such position that he ought to have known them, so that knowledge may be imputed to him." (2 Pomeroy's Eq. Jurisp., sec. 809.)

The statute also requires a restoration of all consideration received by the party seeking the rescission, a placing of all the parties *in statu quo.* This is but an application of the maxim, "He who seeks equity must do equity"; and it applies not only in cases of attempted rescission on the ground of fraud, but also, manifestly, where the rescission is sought because of mistake. (*Clint* v. *Eureka Crude Oil Co.,* 3 Cal. App. 463, 86 Pac. 817; *Rubie Combin. Gold Min. Co.* v. *Princess Alice etc. Min. Co.,* 31 Colo. 158, 71 Pac. 1121; *Snow* v. *Alley,* 144 Mass. 546, 59 Am. Rep. 119, 11 N. E. 764; *Kasch* v. *Labor Temple Assn.,* 18 Cal. App. 508, 123 Pac. 552; *Robinson* v. *Siple,* 129 Mo. 208, 31 S. W. 788, 791.) Nowhere, either in the complaint or in the evidence, in the present case is any offer or attempt shown to place the defendants *in statu quo,* either for the time, labor or expenses incurred by them to bring about the execution of the contract in question, or to relieve them from any of the obligations incurred by them because of said contract toward Wolvin and Simmons. Nor is the rule mitigated by, nor does it lie in the mouth of, plaintiff to say that these things are of little value. (See *Snow* v. *Alley, supra; Conner* v. *Henderson,* 15 Mass. 319, 8 Am. Dec. 103; *Morse* v. *Brackett,* 98 Mass. 205; *Bassett* v. *Brown,* 105 Mass. 551; *Estabrook* v. *Swett,* 116 Mass. 303; *Handforth* v. *Jackson,* 150 Mass. 149, 154, 22 N. E. 634.)

Nor can it be claimed that a rescission of a contract can be had on the ground of inadequacy of consideration. (*Cooper* v. *Reilly*, 90 Wis. 427, 63 N. W. 885.) So whether the contract in question was owing to any mistake, or to any fraud or misrepresentation, its rescission cannot be had unless the parties are placed *in statu quo*, and failing in this the suit cannot be maintained. At this point, and because of the similarity of many of its facts with the case at bar and its clear enunciation of several elemental principles which are applicable, we beg to call attention to the case of *Seat* v. *McWhirter*, 93 Tenn. 542, 29 S. W. 220, and also to *Haviland* v. *Willets*, 141 N. Y. 35, 35 N. E. 958.

Another feature attends the failure on the part of plaintiff to return, or to offer to return, whatever she had received from the defendant claimants upon her alleged discovery of the mistake which, as she states, she and they fell into, namely, that thereby there was a ratification or affirmance of the contract, of which she could not thereafter complain. (*Balue* v. *Taylor*, 136 Ind. 368, 36 N. E. 269, 271.)

*Ratification of transaction by accepting benefits thereof:* A party who has secured to himself the benefits of a contract, and has accepted and used these benefits, has estopped himself in the courts from denying the validity or binding force of the instrument, or from setting up or asserting the contrary. (*Hathaway* v. *Payne*, 34 N. Y. 92; *Brundage* v. *Home Savings & Loan Assn.*, 11 Wash. 277, 39 Pac. 666; *Jones* v. *Langhorne*, 19 Colo. 206, 34 Pac. 997; *Allen* v. *Colorado Cent. Ry. Co.*, 22 Colo. 238, 43 Pac. 1015; *Lane* v. *Pacific etc. Ry. Co.*, 8 Idaho, 230, 67 Pac. 656; *James* v. *Seattle*, 57 Wash. 318, 106 Pac. 1114.)

Plaintiff was estopped by her conduct in resisting the attempt of claimants to recede from the contract. Neither in the law nor in the ordinary affairs of life may one be inconsistent. One may not blow hot and cold, nor mend his hold. (*Newell* v. *Meyendorff*, 9 Mont. 254, 18 Am. St. Rep. 738, 8 L. R. A. 440, 23 Pac. 333; *Mares* v. *Dillon*, 30 Mont. 117, 143, 75 Pac. 963.)

*Mr. William Wallace, Jr., Mr. John G. Brown* and *Mr. T. B. Weir,* for Respondent, submitted a brief; *Mr. Wallace* argued the cause orally.

Equity will cancel the contract in suit, under any of the following rules:

(1) Where the mistake is not one as to the general law but a mistake as to a clear rule of law affecting the rights of persons in private property, equity will relieve against a transfer made in the course of family compromises and settlements. (2 Pomeroy's Eq. Jurisp., sec. 846.)

(2) Wherever a party is mistaken or ignorant of her own antecedent and existing private legal right, interest or estate in property (whether induced to such mistake by the act of the other party or not, but especially if so induced, and whether the matter does or does not involve family compromise settlement), a court of equity will restore property parted with under such misapprehension. (*Id.,* sec. 849; *Baldock* v. *Johnson,* 14 Or. 542, 13 Pac. 434; *Benson* v. *Bunting,* 127 Cal. 532, 78 Am. St. Rep. 81, 59 Pac. 991; *Jeakins* v. *Frazier,* 64 Kan. 267, 67 Pac. 854; *Order of United Commercial Travelers* v. *McAdam,* 125 Fed. 358, 61 C. C. A. 22; *Blakemore* v. *Blakemore,* 19 Ky. Law Rep. 1619, 44 S. W. 96; *Renard* v. *Clink,* 91 Mich. 1, 30 Am. St. Rep. 458, 51 N. W. 692; *Drake* v. *Wild,* 70 Vt. 52, 39 Atl. 248; *Swedesboro Loan etc. Assn.* v. *Gans,* 65 N. J. Eq. 132, 55 Atl. 82; *Livingstone* v. *Murphy,* 187 Mass. 315, 105 Am. St. Rep. 400, 72 N. E. 1012; *Reggio* v. *Warren,* 207 Mass. 525, 20 Ann. Cas. 1244, 93 N. E. 805; *Hutchinson* v. *Fuller,* 67 S. C. 280, 45 S. E. 164; *Standard Oil Co.* v. *Hawkins,* 74 Fed. 395, 33 L. R. A. 739, 20 C. C. A. 468.)

(3) Whenever, because of a mistake as to the clear law, however induced, that which was believed, through the mistake to be a consideration, fails, and there is, on the true view of the law, no adequate consideration for the surrender of property, equity refuses to suffer the property to be thus sequestrated by a stranger and grants relief. (2 Pomeroy's Eq. Jurisp., secs.

842, 849; *Bunnell* v. *Bunnell,* 111 Ky. 566, 64 S. W. 420, 65 S. W. 607; *House* v. *Callicott,* 83 Miss. 506, 35 South. 761.)

(4) If a pure mistake of law, which would not be otherwise relievable (because not containing any of the elements, which are here present, and as shown above make the mistake partly one of fact) be accompanied by any act of the defendants or their counsel, though innocently done, calculated to encourage the error, or conceal the true rule, this makes a case for relief. (2 Pomeroy's Eq. Jurisp., sec. 847.) Section 4984, Revised Codes, but reaffirms the foregoing principles. The supreme court of California, in *Benson* v. *Bunting, supra,* after quoting their statute, section 1578, Civil Code, which is the counterpart of our section 4948, says: "In *Hunt* v. *Rousmanier's Admrs.,* 8 Wheat. (U. S.) 174, 215, 5 L. Ed. 589, 600, Chief Justice Marshall said: 'Although we do not find the naked principle that relief may be granted on account of ignorance of law, asserted in the books, we find no case in which it has been decided that a plain and acknowledged mistake in law is beyond the reach of equity.' " (*Benson* v. *Bunting,* 127 Cal. 532, 78 Am. St. Rep. 81, 59 Pac. 991.) Thus this forcible language of Chief Justice Marshall is applied to the interpretation and application of this particular statute of ours. (See, also, *Gregory* v. *Clabrough's Exrs.,* 129 Cal. 475, 62 Pac. 72; *Kyle* v. *Hamilton,* 6 Cal. Unrep. 893, 68 Pac. 484.) Perhaps the most complete summary of the foregoing rules is found in the case of *Reggio* v. *Warren,* 207 Mass. 525, 20 Ann. Cas. 1244, 93 N. E. 805.

*Consideration:* We do not dispute that the recited consideration is sufficient in law to support a contract otherwise valid; or that if claimants had been heirs at law, as recited, it would have been a valid and unassailable contract for the surrender of dower in claimants' supposed half of the estate. The fact that claimants took advantage of the impending mine trade to extort a surrender of the supposed dower would not have invalidated the contract because the supposed facts and conditions would have been the actual facts and conditions. What we do say is this: (1) Under the real as distinguished from the sup-

posed conditions, there was no adequate consideration for the contract. (2) A contract without consideration is a nullity, and may be defended against at law without seeking rescission. (3) A sufficient legal consideration is no bar to relief in equity for mistake, since equity avoids, on that ground, contracts otherwise valid in law, and one element of a contract valid in law is a sufficient consideration. (*Baldock* v. *Johnson,* 14 Or. 542, 13 Pac. 434.)

*Promptness of rescission and restoration of claimants' original status:* In the outset there was no plea of laches in claimants' answer, or of any facts from which it could be inferred; nor were any facts disclosing the same averred in the complaint. While the authorities are not in accord, it is probable that, in this state, in the absence of such a disclosure in the complaint, laches, like the bar of limitation, should be plead as a defense before it will be considered. (*Kavanaugh* v. *Flavin,* 35 Mont. 133, 88 Pac. 764; *American Min. Co.* v. *Basin & B. S. Min. Co.,* 39 Mont. 476, 481, 24 L. R. A. (n. s.) 305, 104 Pac. 525; *Dolenty* v. *Broadwater County,* 45 Mont. 261, 266, 122 Pac. 919; *Humphreys* v. *Butler,* 51 Ark. 351, 11 S. W. 479; *Simpson* v. *McPhail,* 17 Ill. App. 499; *DeWitt* v. *Miller,* 9 Tex. 239, 246.)

The considerations making for application of laches where a less period than that prescribed by statutes has elapsed, are (1) loss of important testimony through death of parties or witnesses, (2) substantial increase of value of the property, or (3) its sale to third persons. (*Bower* v. *Stein,* 177 Fed. 673, 101 C. C. A. 299.) These conditions, it would seem, should be alleged, and can only be alleged by affirmative pleading.

Waiving, for argument's sake, the above features, but eleven months elapsed between Allen's signing the petition and the commencement of this suit, but eight months between plaintiff's execution of the "dower release," and this suit; and less than thirty days between her discovery of the mistake and this suit; with abundant excuse for failing sooner to make discovery. Had there been no excuse, any of these periods are too short for the application of the doctrine of laches. (1 Beach on Modern

Law of Contracts, sec. 821.) None of the elements warranting an application of the doctrine of laches where a less period than that prescribed by statute has elapsed are present in this case; and in none of the cases cited by claimants was the period between the act complained of and the suit so brief as here.

*General estoppel:* This feature of estoppel has two aspects: (1) Estoppel by the alleged retention of benefits, which we have already considered above; and (2) an alleged estoppel by striving to hold claimants to the mine trade. As to the latter, see 2 Herman on Res Adjudicata & Estoppel, secs. 946, 798, 785, 791, 760, 763, 781, 792, 987; *Anthony* v. *Chapman*, 65 Cal. 73, 2 Pac. 889; *Whelan* v. *Brickell*, 4 Cal. Unrep. 47, 33 Pac. 396; *In re Belt's Estate*, 29 Wash. 535, 92 Am. St. Rep. 916, 70 Pac. 74. This court has disposed of this whole question of estoppel as applied to the present case by its decision in *Rausch* v. *Rausch*, 14 Mont. 325, 330, 36 Pac. 312. (See, also, *Hobbs* v. *McLean*, 117 U. S. 567, 29 L. Ed. 940, 6 Sup. Ct. Rep. 870.) Intelligent election, *i. e.*, action taken after plaintiff knew that she was the sole heir and could claim the whole estate, is an essential to an estoppel. (2 Herman on Res Adjudicata & Estoppel, secs. 948, 781, 1029, 1057, 1062; 16 Cyc. 733.) Here the findings are conclusive that plaintiff was laboring under the same mistake as to her title on July 12, when the matters said to constitute an estoppel transpired, as she was on July 8 when she signed the "dower release" and escrow, and as she was in all the months before after her husband's death. So, too, on the faith of what she then did, claimants must have parted with something, or so changed their position as that injury would result to them. (*Rausch* v. *Rausch, supra; Hobbs* v. *McLean, supra*.) This element of estoppel is also utterly wanting here.

MR. JUSTICE SANNER delivered the opinion of the court.

Henry Brundy died intestate, without issue and without father, mother, brother or sister him surviving. The plaintiff (respondent here) is his widow; she is seventy-nine years of age, inexperienced in business, destitute of legal knowledge, and

obliged to rely upon others for proper direction in the conduct of her affairs. The appellant Canby is, and in the transactions to which this suit relates was, the attorney in fact for the other appellants; and these—hereinafter called the claimants—are the issue of Henry Brundy's predeceased brothers and sisters. The defendant W. R. Allen is the administrator of the estate of Henry Brundy, deceased; and the defendant State Savings Bank is the depositary of certain papers and the distributor of funds involved in this controversy.

On July 12, 1912, the plaintiff, as party of the first part, and the claimants, as parties of the second part, entered into an agreement, hereinafter referred to as Exhibit "A," which recites: "That for and in consideration of one dollar, cash in hand paid by the said parties of the second part to the said party of the first part, the receipt of which is hereby acknowledged, and upon the further consideration that the parties of the second part, by their attorney in fact and trustee, shall join with the said party of the first part * * * in the execution to one A. B. Wolvin * * * of a certain lease and option, and deed to purchase certain mining claims, the title to which is now vested in the heirs of the said Henry Brundy, deceased, subject to the rights of the party of the first part therein, the said party of the first part hereby relinquishes all right of dower, which she has or may have in the property, real and personal, * * * of her deceased husband, Henry Brundy, * * * and agrees to accept one-half of the proceeds of the sale of said property to said A. B. Wolvin * * * ; also one-half of all personal property, in full of her legal rights therein, either as widow or heir at law of said Henry Brundy, deceased."

The sale to Mr. Wolvin having been arranged, a lease option, a deed and an escrow agreement—hereinafter called Exhibit "B"—were executed the same day, the respondent joining with the claimants therein. Exhibit "B" provides: "The within deed is hereby placed in escrow in the State Savings Bank of Butte, Montana, to be delivered to A. B. Wolvin, his successors or assigns, upon payment of the following sums of money, to-wit:

$1,000 on the day of the placing of the said deed in said bank; $4,000 ninety days thereafter; $5,000 six months * * * $75,000 one year, * * * $90,000 eighteen months. * * * It is also agreed in event that A. B. Wolvin, his successors or assigns, do not make the payments when due, that the said bank will return to Benjamin H. Canby, attorney in fact and trustee, said lease and option and deed for cancellation. All money deposited by A. B. Wolvin, his successors or assigns, on account of said lease and option, shall be credited as follows: One-half to Sally Brundy, widow of Henry Brundy, deceased, the balance to Benjamin H. Canby, attorney in fact and trustee. * * * '' Attached to Exhibit "B" is a memorandum providing for the payment of $25,000 to N. W. Simmons, for his services in making the sale.

The complaint was filed on the 17th day of March, 1913. In addition to the facts above stated it avers that by reason of plaintiff's age and inexperience she left the details of the estate of Henry Brundy to the care of the attorneys thereof, who, for the purpose of securing accurate information concerning the relatives of said intestate to be embodied in the petition for letters of administration, consulted Stephen D. Sexton, then in Butte representing the claimants and asserting claims for them as heirs of said intestate, and upon the information thus obtained, erroneously set forth in said petition that there were surviving grandchildren of said intestate, of all of which she was ignorant; that the claimants have not and never had any interest whatever in said estate or any thereof; that shortly after the death of Henry Brundy they made themselves known and led her to believe, and she was otherwise led to believe, and she at all times until a short time prior to the filing of her complaint did mistakenly believe, that her interest in the estate and property of her husband was not to exceed a one-half interest besides dower, and she was not advised to the contrary until a few days before the commencement of this suit; that while she was laboring under this mistake, negotiations were pending for the sale referred to in Exhibit "A," during

which representatives of the claimants notified plaintiff, her counsel and the administrator, that title to said property could not be passed unless the claimants joined in the contracts and deeds, insisting that they were entitled to an undivided one-half of said realty, less whatever rights plaintiff's dower gave her therein, declaring that the only controversy was over the value and extent of her dower, and demanding as a condition to their joining in said contracts and deeds that she surrender her dower therein; that in various ways, which are recited, the claimants prior to the making of said sale and the contracts Exhibits "A" and "B," induced the plaintiff to rest in the belief that her interest in said property was but one-half, plus dower; that she does not know whether they were honestly mistaken themselves as to her and their rights, but by their statements and conduct was led to believe they were, and if at any time prior to the execution of said contracts they learned otherwise, they concealed such knowledge from her; that, knowing she was laboring under the mistaken belief referred to, the claimants induced her to execute Exhibits "A" and "B"; that had she known, been advised or even suspected that her interest in said property was a fee-simple absolute, and that the claimants had no interest whatever therein, she would not have entered into said contracts, and there is no consideration therefor; that while the claimants were insisting upon the surrender by her of her supposed dower claim in said property, when they came to draft Exhibit "A" they caused it to be so framed and worded as not only to surrender her dower, but all her legal rights as widow or heir at law in said property, though when she signed the same she believed, and was encouraged by them to believe, that the sole effect of said Exhibit "A" was the surrender of her supposed dower interest; that in so far as Exhibit "B" authorizes any payments to the claimants or to Canby, it was and is without consideration; that said administrator joined in said Exhibit "B" and the defendant bank assumed the obligations imposed thereby; that under its terms the sum of $9,500 paid by Wolvin on said sale, has been divided between the claimants and the

plaintiff; that other sums will be paid into said bank by said Wolvin on account of said sale which the defendants bank and Allen propose to and will, unless restrained, pay over in part to the claimants; that they are for the most part nonresidents of this state and insolvent; that plaintiff has received nothing of value from the claimants under said contracts, but they have received moneys to the amount of $4,750 which rightfully belong to her, and there is nothing, therefore, which she ought to return to them as a condition precedent to the cancellation of Exhibit "A" or the reformation of Exhibit "B." Her prayer is for the cancellation of Exhibit "A," for an adjudication that the claimants have no right in or to the moneys which have been or are to be paid on account of said sale; for the reformation of Exhibit "B" so as to provide that all moneys payable thereunder, save the sum due to Simmons, be paid solely to her; for a judgment against the claimants for the moneys already received by them under said Exhibit "B," and for such other relief as may be just.

A demurrer to the complaint was interposed by the claimants, and as the questions raised thereby recur upon the evidence, discussion of them will be deferred until their application to the whole case can be considered. The demurrer was overruled; whereupon the defendants answered. The separate answers of the bank and Allen are not material to the controversy at the present stage. The effect of the answer of the appealing defendants is to deny the essential allegations of the complaint, save the widowhood of the plaintiff; to allege their heirship and right to share in the estate of Henry Brundy, deceased, and recognition of such right by the plaintiff; to assert a consideration for Exhibits "A" and "B," and that the parties have acted thereon. The affirmative allegations of the answer are put in issue by a reply.

Trial was to the court sitting without a jury. Findings of fact and conclusions of law in substantial accord with the complaint were filed, and judgment was entered conformable to the prayer thereof. A motion for new trial was made and denied.

The case is before us on appeal from the judgment and from the order denying a new trial.

Thirty-three errors are assigned, based upon the overruling of the demurrer, the facts found, the offered findings refused, the conclusions of law, the judgment and the refusal of a new trial. Their effect is to present the following contentions: 1. That the complaint does not allege nor the the evidence show the contracts in question to have been executed under the influence of mistake, mutual or otherwise; 2. That the complaint does not allege nor the evidence show any "sufficient reason for the delay in instituting the present action, *i. e.,* excusing the delay in ascertaining plaintiff's alleged rights"; 3. That there was a consideration for the plaintiff's execution of the contracts, and neither the complaint nor the evidence discloses any offer by her to place the claimants *in statu quo;* 4. That the plaintiff is estopped to demand a rescission by her acceptance and retention of benefits under the contracts, and by her resistance to an attempt of the claimants to recede therefrom; 5. That certain findings made, and the refusal of certain others proposed, none of which are germane to the foregoing propositions, were erroneous; 6. That the money judgment against Canby was improper. Of these in their order.

1. Whether there was a mistake or not depends primarily upon the status or relationship of the claimants to the estate of Henry **[1]** Brundy, deceased. Are they his heirs at law, and entitled to share in his estate as such; or is the plaintiff his only heir? Subdivision 4 of section 4820, Revised Codes, reads: "If the decedent leave a surviving husband or wife, and neither issue, father, mother, brother nor sister, the whole estate goes to the surviving husband or wife." In this language there is nothing ambiguous. It is crystal-clear and within itself defies construction. Applied to the facts of this case, it can lead to but one result, *viz.:* That the plaintiff is the sole heir at law of Henry Brundy, deceased. (*In re Ingram's Estate,* 78 Cal. 586, 12 Am. St. Rep. 80, 21 Pac. 435; *Carmody's Estate,* 88 Cal. 616, 26 Pac. 373; *Nigro's Estate,* 149 Cal. 702, 87 Pac. 384; *Cigaran's Estate,*

150 Cal. 682, 89 Pac. 833; *Sweetland* v. *Transberg,* 176 Fed. 641.) This provision is, however, but a subdivision of section 4820, and though its words be clear in meaning, may nevertheless require construction by reason of its correlations. On this the claimants ground themselves, asserting that subdivision 4 must be read in connection with subdivision 2, and that, when so read, the issue of predeceased brothers and sisters cannot be excluded from succession. Subdivision 2 is as follows: "If the decedent leave no issue, the estate goes one-half to the surviving husband or wife, and the other to the decedent's father and mother in equal shares, and if either be dead the whole of said half goes to the other. If there be no father or mother, then one-half goes in equal shares to the brothers and sisters of the decedent, and to the children of any deceased brother or sister, by right of representation. * * * " This language also is clear. It plainly indicates that had Henry Brundy left a surviving sister or brother, then the claimants in this case would be entitled to share in his estate. There is no conflict here with subdivision 4; on the contrary, collating the two subdivisions, we find a plain legislative declaration that to enable nieces or nephews to share an estate with a surviving wife, there must be a surviving brother or sister and neither father nor mother. The suggestion is made that the right of succession to nieces and nephews ought not to rest "upon such a fortuitous, and in the course of nature such an unlikely, circumstance"; but with this we have nothing to do. Succession to estates is purely a matter of statutory regulation; if something may be said against the law as it is written, much may also be said in its defense. At any rate, it is so written and our duty is to recognize and apply it.

Now, the complaint alleges with some elaboration that the [2] plaintiff entered into the contracts under the belief, apparently shared by the claimants and induced in part by their conduct, that her interests in the estate of Henry Brundy were limited by law to one-half thereof—plus dower—the other half—subject to dower—going to the claimants by right of succession.

These are averments of mutual mistake, the notion being erroneous. Our attention is called, however, to paragraph X, which, it is said, destroys the foregoing and leaves the complaint without any effective allegations on the subject. Paragraph X sets forth, in substance, that she "does not know" whether the claimants were honestly mistaken as to her rights; that she was led by their conduct to believe, and did believe, that they were so mistaken, but that, if they learned otherwise, they carefully concealed their knowledge and information from her. The contention is that these allegations invoke the provisions of subdivision 2 and utterly exclude the idea of mutual mistake covered by subdivision 1 of section 4984. In support of this we are cited to *Bottego* v. *Carroll,* 31 Mont. 122, 77 Pac. 430. In that decision it was held that allegations of a mistake of law by one party, coupled with fraud by the other, are not supported by proof of mutual mistake. But such is not the condition here. Paragraph X is in the alternative. It does not categorically allege anything except that she was led to believe, and did believe, the claimants to be honestly mistaken; its efficiency is made to depend upon the development of the case. The most that can be said is that, as a potential inconsistency, it might have laid the complaint open to a demurrer for ambiguity. But no such demurrer on this ground was filed, and it would be an altogether unwarranted application of *Bottego* v. *Carroll,* to say that paragraph X results in a total annihilation of the complaint.

The court found as a matter of fact that before and at the [3, 4] time Exhibits "A" and "B" were executed, as well as thereafter, the claimants and the plaintiff alike labored under the mistake set forth in the complaint. To challenge this as without support in the evidence seems almost captious. That both parties acted upon the same erroneous notion of the law, that the plaintiff thought she knew the law and that she was honestly mistaken about it, are matters too plain from the record for discussion; and honest mistake must be credited to the claimants as well, unless we impute to them the grossest fraud.

Nowhere do they disclaim the notion or belief that they are in truth heirs at law of Henry Brundy; on the contrary, since the day of his funeral they have persistently maintained it; promptly they pressed their claims as such upon both the plaintiff and the administrator; vigorously they asserted the necessity of their assent to a valid sale of the property; repeatedly they alleged in their answer that the plaintiff made no mistake because they are heirs; and their contentions in that behalf have been presented to the trial court and to this court with signal ability. Almost the last word of their counsel upon this subject is this: "That Sexton and they were actually ignorant appears not only from the action of Sexton in regard to the withdrawal of the papers, *etc.*, on July 12, 1912, but from his testimony that he knew nothing of the laws of Montana."

It is said, however, that mutual mistake "is untenable if either party knew, or, what is the same thing, had the means of knowing, the subject matter of the alleged mistake. Certain it is that plaintiff and her *alter ego*, Allen, were possessed of the means of knowledge, and any exercise by them of the duty of inquiry would have disclosed everything that they now claim they have discovered." Means of knowledge, generally speaking, do not affect the fact that a mistake was made, but only the availability of it as a basis for relief. If a logical exception be claimed to exist where the means of knowledge are inherent in the subject matter itself, such exception can be applied here only by virtue of the supposed presumption that the law is known to all. There is a rule that ignorance of the law does not excuse, but we know of no presumption imputing accurate legal knowledge to the world at large. The necessary result of such a postulate would be that a mistake of law can never occur because, accurate knowledge being in every instance present in the mind which entertains the wrong notion, to entertain such notion is no mistake, but deliberate choice. How far this is from the true state of affairs may be gathered from the following provisions of our Code: A party to a contract may rescind the same if his consent thereto was given by mistake (Rev. Codes,

secs. 5063, 6112), such consent so given being not real but only apparent (Rev. Codes, sec. 4973) ; mistake may be either of fact or of law (Rev. Codes, sec. 4982) ; mistake of law exists when there is: ''1. A misapprehension of the law by all parties, all supposing that they knew and understood it, and all making substantially the same mistake as to the law; or 2. A misapprehension of the law by one party, of which the others are aware at the time of contracting, but which they do not rectify.'' (Rev. Codes, sec. 4984.)

But the claimants intimate other grounds for their position—the facts, for instance, that Governor Allen, the administrator and supposed agent of the plaintiff had seen the statute of succession and that the estate had counsel—in consequence of which, coupled with the presumption above mentioned, mistake on her part is legally unthinkable.   While there is evidence that a part of the statute of succession had been read to Governor Allen, there is nothing whatever to show that subdivision 4 of section 4820 had been called to his attention until long after the contracts were signed.   The estate had counsel, it is true, but they were not counsel for the plaintiff, and they, misled as to the facts, unwittingly misled Governor Allen as to the law, and it is not at all strange that he, a layman, though he had seen the law, should have distrusted his own capacity to understand it. The theory of the argument is that only blameless mistake will afford a basis for relief.   Such is not correct: ''The term 'mistake' involves the conception that he to whom the fault expressed by it is imputed has been guilty of some degree of negligence which may or may not be excusable when viewed in the light of the circumstances of the particular case.   Courts of equity are not bound by cast-iron rules.   The rules by which they are governed are flexible and adapt themselves to the exigencies of the particular case.   Relief will be granted when, in view of all the circumstances, to deny it would permit one party to suffer a gross wrong at the hands of the other.''   (*Parchen* v. *Chessman,* 49 Mont. 326, 339, 142 Pac. 631.)   These observations have special application to mutual mistakes of law, in order

that the statute authorizing relief in such cases may not be nullified.

Circumstances excusatory of plaintiff's mistake appear in ample measure. The fact that even after she brought this suit the claimants have felt warranted in contesting her construction of the law; that painstaking counsel, the learned judge of the court below, and the members of this court have all been called upon to participate in its settlement, furnishes at least some explanation for the ignorance of an old lady inexperienced in business, unfamiliar with the law, and dependent for guidance upon others whose well-meant efforts to be correct but led them further into error. In general, it may be said that the evidence clearly and affirmatively discloses that while things occurred before and at the time the contracts were made, to increase her reliance in the misapprehension she then had, nothing at all happened until just prior to the bringing of this suit to suggest to her that she might have been mistaken or that there was anything to correct. In our opinion, a finding denying mutual mistake would have been impossible.

It was also expressly found that had the plaintiff, or the administrator, known, believed, suspected or been told that claimants were not in fact heirs of Henry Brundy, she would not have executed Exhibits "A" and "B." The criticism of this finding seems based rather upon the idea that her ignorance was inexcusable and therefore of no avail, than upon the view that it is without foundation in the testimony. However, that may be, Exhibit "B" itself, together with her testimony and that of Governor Allen, afford ample warrant for the finding.

2. The subject of delay is adroitly made to suggest two aspects, *viz.*: In commencing suit, and in the ascertainment by plaintiff [5, 6] of her rights. The suit was brought within nine months after the transactions in question, and the time within which it could, as a matter of limitation, have been brought is two years after discovery. (Rev. Codes, sec. 6449.) Assuming, however, that where laches appears on the face of the complaint, advantage thereof may be taken by demurrer for substance, and conceding

that under the maxim, "Equity aids the vigilant," laches may arise from an unexplained delay short of the period fixed by the statute of limitations, still laches will not be presumed from such a delay alone. (*Wright* v. *Brooks,* 47 Mont. 99, 108, 130 Pac. 968.) It must be made to appear affirmatively that unusual circumstances exist which on account of such delay render the proceeding inequitable; else relief cannot be denied on this ground. When such circumstances do not appear from the face of the complaint, they must be pleaded by the answer, to be available. (16 Cyc. 179, 180; *Kelley* v. *Boettcher,* 85 Fed. 55, 62, 29 C. C. A. 14; *Wyman* v. *Bowman,* 127 Fed. 257, 269, 62 C. C. A. 189; *Lux* v. *Haggin,* 69 Cal. 255, 267, 4 Pac. 919, 10 Pac. 674; *Marsh* v. *Lott,* 156 Cal. 643, 647, 105 Pac. 968.) It follows that a mere delay in commencing suit, short of the period of limitation, need not be excused in the complaint.

We take it to be the position of the claimants, however, that this is not a case of mere delay in bringing suit, but a case [7] wherein relief is sought from a mistake, the failure to discover which is itself an affirmative showing of laches. The argument is this: The mistake pleaded is one of law; the means of discovery were presumptively present and were available at all times; discovery must, therefore, be imputed from the moment the mistake was made, or negligence must be inferred; if negligence be inferred, that is laches; if discovery be imputed, then the plaintiff did not act promptly as required by section 5065, Revised Codes. In so far as this argument grounds itself upon the conditions existing when the contracts were made, it has been disposed of above. As to subsequent events, the following may be added: Mistakes of law and mistakes of fact are, as possible bases for rescission, *in pari materia;* there is not, either as to the duty of discovery or the time of commencing suit, any distinction between them. As to either, laches may arise from a culpable neglect to discover, but we are not required to impute laches from a delay in discovery for a period of less than nine months merely because the mistake is one of law. Whether a case is or is not one of laches depends upon the circumstances

affecting the party seeking relief as well as the party against whom relief is sought. Where the circumstances are such as to excuse a failure to discover, where also the situation of the parties has not changed, no occasion is offered to apply the doctrine of laches. (*Streicher* v. *Murray*, 36 Mont. 45, 92 Pac. 36, 59; *Delmoe* v. *Long*, 35 Mont. 139, 160, 88 Pac. 778.) No change has occurred in the situation of the parties to this suit— at least none to the prejudice of the claimants. The plaintiff could not discover the mistake until she had reason to suspect, at least, that a mistake had in fact been made. Nothing in the evidence suggests such a reason, and many things are shown by which any misgivings she might have entertained were wholly allayed. The prompt action required by section 5065 is after discovery, and in this she was not delinquent. If the circumstances of this case do not suffice to avoid the claim of laches, then the statute is meaningless, so far as allowing relief from mistake of law is concerned.

3. Save as an aid in determining the duty of the plaintiff to make or offer restoration, the question of consideration cannot be deemed of great importance. Consideration is present in practically every contract sought to be rescinded for mistake and is not of itself any obstacle to rescission. The real question arises [8] under sections 5065 and 6113, Revised Codes, which provide that the party seeking rescission must restore or offer to restore everything of value received by him from the other party, and that rescission cannot be had for mere mistake unless the party against whom it is adjudged can be restored to substantially the same position as if the contract had not been made. We do not think the complaint is deficient in respect of these requirements. It alleges that the plaintiff received nothing of value from the claimants under the contract sought to be rescinded; and, of course, if she received nothing there was nothing to restore. This general allegation is not necessarily negatived by the admission that the claimants joined in the transfer to Wolvin as contemplated by Exhibit "A," because, according to the complaint, they were strangers to the title and their assent

was, *prima facie,* not an article of value. The facts are that the purchaser directed his attorneys to see that all persons whose assent might be requisite to good title should join in the conveyances. These attorneys happened to be the firm representing the estate of Henry Brundy, which was known and satisfactory to both clients. The particular attorney in charge of his work was Mr. Louis P. Sanders, also in direct charge of the Brundy estate. To secure accurate information concerning the heirs of Henry Brundy, Mr. Sanders consulted Stephen D. Sexton, one of the claimants and spokesman for them. As the result of that consultation Mr. Sanders became convinced that there were grandsons and granddaughters who would be entitled to inherit and whose assent was therefore necessary to a good conveyance to Wolvin. This and this alone is the reason, so far as the purchaser was concerned, for exacting the concurrence of the claimants. Mrs. Brundy, on the other hand, desired the property to be sold, as they did, and she, believing them to be heirs whose assent was necessary to the transfer, agreed to waive her supposed dower in their supposed half, for such assent legally expressed. All Wolvin wanted was good title, and but for the mistakes referred to and for which the claimants were in part responsible, the sale could have been accomplished without their intervention. Under these circumstances, it is difficult to see how they gave anything of value to her which it could be her duty to return.

Whether the rule that rescission cannot be had for mere mistake unless the party against whom it is adjudged can be restored to substantially the same position as if the contract had not been made, has any application to the instant case depends upon what change in the position of the claimants was worked by their joining in the Wolvin sale. They contend that the lease option and the deed to Wolvin, as well as the contract for Simmons' compensation, imposed liabilities upon them from which they are not relieved by the cancellation of Exhibit "A." As to the Simmons memorandum, this is manifestly not the case. So far from expressing any personal undertaking to pay Sim-

mons, its effect is to authorize the depositary to pay certain sums to him out of the Wolvin installments as received, with the specific stipulation that in case of Wolvin's failure, Simmons waives all further claims and no attempt to affect this feature is involved in this case. The same conclusion must be reached as regards the lease option. It had a dual purpose, *viz.*: To put Wolvin into possession pending the completion of his purchase, and to provide for delivery to him of a deed in form sufficient to pass title to the property. As to neither can the claimants be at all endangered, because the former has been accomplished, and the latter will occur automatically when the payments are made, the deed having been deposited in escrow for the purpose.

The property sold consisted of mining claims. The deed contains no express warranties, and the only liability which could possibly arise from it against anyone is for the breach of the warranties implied by law from the use of the word "grant," *viz.*: complete title and freedom from encumbrances. So far as the claimants are concerned, this liability is purely theoretical. An effort on the part of Wolvin to proceed as against them would be effectively met by the fact—admitted by him, adjudged as to them—that they joined in the deed through his and their mistake. Their counsel suggest that assuming no right in them, they still stand as guarantors for Mrs. Brundy; but no intention to act in any such capacity can be implied from the deed or existed in fact. The whole doctrine of restoration is equitable and requires merely that the party against whom rescission is adjudged shall be no worse off than before the contract. The bare possibility that they, instead of the real and efficient grantor, may be sued by Wolvin on account of the property—a possibility shared by all mankind and without hope of fruitful result to him—is not a substantial change in their position.

The claimants contend that because Exhibit "A" recites one [10] dollar to have been paid by them to the plaintiff, it was necessary for her to allege and prove an offer to return the payment so made. This might be correct under some circumstances; but the complaint avers the receipt by the claimants of $4,750

justly belonging to her. Under these conditions she was not obliged to offer back the dollar even if its receipt by her had not been denied. A money consideration need not be returned where, in case of a decree in favor of plaintiff, the defendant would be required to account for a greater sum. (*Arnold* v. *Frazer*, 43 Mont. 540, 117 Pac. 1064; *Wilson* v. *Moriarity*, 77 Cal. 596, 20 Pac. 134.)

Notwithstanding the rather vigorous argument to the contrary, it is quite apparent that the dollar recited in Exhibit "A" was never paid. Sexton says he did not pay it, and he, as the representative of the claimants at that particular time and for the particular purpose of closing the transaction, is the person by whom it should have been paid; Allen says he did not receive it, and he, as the representative of the plaintiff, is the person to whom payment would naturally have been made. It is true that Mrs. Brundy, whose examination was for humane reasons obviously restricted to essentials, did not testify on the subject and it is possible, of course, that she received the dollar from the claimants through some other channel; but such bare improbable possibilities rendered still more improbable by the [11] circumstances under which the papers were signed by her, need not be considered. Nor, if the dollar had been paid, would the court have been authorized to dismiss the suit and confirm the claimants in their accession to property worth approximately $90,000, merely because its return had not been formally offered. *De minimis non curat lex.* Restoration is not a condition to the right to sue but to have the relief, and the court, with the entire matter before it, may direct as a condition to the relief whatever restoration equity requires.

Contention is also made that some expenditures were made on the part of the claimants, by Stephen D. Sexton, in procuring their assent to the transactions in question. These, of course, were matters proper to be shown in defense to aid the court in completely determining the rights of the parties. In the absence of any proof of the amount of such expenditures, they could not be considered, assuming them to be otherwise allowable.

4. The claim of estoppel is based upon two grounds: The first is the alleged acceptance of benefits under the contracts in **[12]** question, that is, the receipt by the plaintiff of one-half the moneys paid on the Wolvin purchase. The record does not disclose that she received anything after learning the facts which entitle her to rescind. The character of estoppel relied on is estoppel *in pais,* and that arises only when one party has by his words or conduct misled the other to the disadvantage of the latter. That is not the situation here. Plaintiff was entitled to all the proceeds of the Wolvin sale; she took what was unquestioned, the balance being withheld from her on account of the contracts but without true legal warrant. Her situation is assimilated to that of the defendant in *Rausch* v. *Rausch,* 14 Mont. 325, wherein this court said: "There is no principle of estoppel to bar defendant, under the conditions shown in this case, from asserting her right to said property. If so, then she is estopped by having suffered wrongs, * * * and the law of estoppel, so operating, would augment her injury. Such is not the office of estoppel. It is interposed against guilty conduct to prevent imposition, deception and injury to others acting in good faith in reference to the same subject. Nor does it appear, that any disadvantage resulted to plaintiff from the events recited."

The second ground of estoppel is that on the day after the papers were executed and deposited in the bank, Stephen D. Sexton attempted to recall the papers and avoid the whole transaction because of some minor fault found by him with the proceedings having nothing whatever to do with the supposed rights of the parties. This attempt was frustrated by counsel and by the administrator, a small monetary concession being made to Mr. Sexton. It is to be noted that all parties were at this time **[13]** still laboring under the mistake which gave rise to the contracts. It is elementary law that no act which, if done with full knowledge of one's rights, would constitute an estoppel by ratification, can have that effect when done in ignorance or

under the influence of the same mistake as induced the contract sought to be rescinded.

5. Specific exception is taken to certain findings and to the refusal of certain others proposed, which are not strictly within [14, 15] the range of the above discussion. None of these findings which were made are necessary to the decision. As to them it may be said that while they are supported by more or less evidence, to determine its legal sufficiency in each instance would be useless, because the judgment would still stand though all of them were unwarranted. (*Pope* v. *Alexander,* 36 Mont. 82, 92 Pac. 203, 565.) Whether the claimants are entitled to a review of their refused proposals is a serious question, considering the state of the record. As there are, however, substantial reasons for the action of the trial court, we will proceed to state them; By proposals I and XIII, the court was asked to find upon matters touching which there was no issue. Error cannot be ascribed for this. (*O'Brien* v. *Drinkenberg,* 41 Mont. 538, 111 Pac. 137.) Proposals VIII and XVII sought findings to the effect that no duress or fraud had been practiced upon [16] the plaintiff to induce her to execute the contracts. Duress is not even suggested by the pleadings, and fraud was negatived by the positive and incompatible finding of mutual mistake. Proposal No. XII was, in effect, a request to find that plaintiff's mistake and her continuance therein were due to her inexcusable negligence—a conclusion not necessitated by the evidence. Proposal XV, that Stephen D. Sexton did not represent the other claimants except to deliver the papers on July 11, 1912, is the exact opposite to the court's finding No. 10; there was ample evidence, in our judgment, to support the finding as made, and ample warrant therefore to reject its opposite. Proposal XVIII, "that before he advised the plaintiff to execute the said papers, Allen had been advised concerning the laws of Montana governing succession," is elusive. If it means that Allen was correctly advised, it is without warrant in the evidence and is opposed to the true facts as found by the court. If it means anything else, it was either a repetition of facts found or was immaterial.

6. The decree adjudges that the appellant Canby, who is the attorney in fact of the claimants and who still retains the moneys paid over for them under Exhibit "B," pay to the plaintiff the sum of $4,500, with interest from January 4, 1914. While this portion of the decree is made the subject of special argument in the brief of claimants, such argument is based upon the proposition that rescission of Exhibit "A" and reformation of Exhibit "B" are impossible. As, in our view, such a result is not impossible, but is commanded by the record, this feature of the decree may be regarded as part of the restoration of the *status quo,* and no fault can properly be found with it.

Upon the whole case we are satisfied that justice was done—and this without error prejudicial to anyone. The judgment and order appealed from are therefore affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.