CLARY, Administrator, Appellant, v. FLEMING, Re-
SPONDENT.

(No. 4,371.)

(Submitted April 15, 1921.  Decided May 31, 1921.)

[198 Pac. 546.]

*Ejectment—Resulting  Trusts—Husband  and  Wife — Convey-
ances—Gifts—Presumptions—Divorce — Collusion — Public
Policy.*

Appeal and Error—Assignments of Error—Rules of Supreme Court—
Briefs.
1.   Where errors are assigned involving the rulings of the trial court
upon objections to evidence, appellant must, under subdivision
3b of Rule X of the supreme court, point out in his brief the
specific evidence objected to, and give the page or pages of the
transcript upon which such rulings may be found.
Husband and Wife—Conveyances—Divorce—Collusion—Public Policy.
2.   An agreement between husband and wife, whereby the latter
promised to convey a lot to the former in consideration of his failure
to fight a divorce action instituted by her, was collusive and void
as against public policy.
Same—Property Settlements—Must be in Writing.
3.   An agreement between husband and wife providing for a prop-
erty settlement between them must, under section 3695, Revised Codes,
be in writing.
Real Property—Resulting Trusts—Conveyances Between Husband and Wife
—Gifts—Presumptions.
4.   The rule declared by section 4538, Revised Codes, that where real
property is conveyed to one person and the consideration therefor is
paid by another, a trust is presumed to result in favor of the person
paying the consideration, *held,* subject to the exception that where
the property is purchased by one with his own money and the title
is placed by him in another to whom he stands in a confidential
relation, such as husband, wife, parent, child, *etc.,* the presumption,
rebuttable in character, is that the conveyance is made as a gift.
Same—Resulting Trusts—Conveyances Between Husband and Wife—Char-
acter of Evidence Required.
5.   Where it is sought to establish a resulting trust by reason of a
conveyance made by or on behalf of a husband to his wife, the
evidence establishing such trust must be clear, convincing and practi-
cally free from doubt, especially so where the wife is dead and the
husband must establish his case by his own testimony as to oral
conversations between himself and deceased.
Same—Resulting Trusts—Equity—Laches.
6.   In an action in ejectment in which defendant sought to establish
a resulting trust in property conveyed to his wife, the consideration
for which was paid by him, *held,* that by waiting ten years before
asserting his claim, the wife in the interim having secured a divorce,

remarried and died, she in her lifetime paying the taxes, rented and in every way treated it as her own, he was guilty of such laches as precluded his right to appeal to a court of equity for relief.

*Appeals from District Court, Fergus County; Roy E. Ayers, Judge.*

ACTION by C. M. Clary, as administrator of the estate of Margaret Wolf, deceased, against A. L. Fleming. From a judgment for defendant, and from an order overruling his motion for new trial, plaintiff appeals. Reversed and remanded.

*Mr. Charles J. Marshall* and *Mr. C. W. Buntin,* for Appellant, submitted a brief; *Mr. Charles J. Dousman,* of Counsel, argued the cause orally.

*Messrs. Cheadle & Cheadle,* for Respondent, submitted a brief; *Mr. E. K. Cheadle* argued the cause orally.

MR. JUSTICE REYNOLDS delivered the opinion of the court.

This action was brought by plaintiff against defendant for the purpose of ejecting defendant from a certain lot in the original town site of Moore and quieting title in plaintiff thereto. The case was tried to the court without a jury. Findings were made in favor of defendant, and judgment followed. Motion for new trial was made and overruled. Plaintiff appeals from the judgment and order overruling motion.

Margaret Wolf, deceased, was formerly Margaret Fleming, and the wife of A. D. Fleming, the defendant. In May, 1905, a deed was made by Montana Town-Site Company to Margaret Fleming conveying the premises. As an affirmative defense the answer alleges that defendant paid certain sums of money on the contract for the purchase of the lot, that no consideration was ever paid by Margaret Fleming for the execution and delivery of the deed, and that immediately prior thereto it was agreed between defendant and his wife that

he should allow the deed to run to her as grantee in consideration of her promise that she would convey the lot to him at any time upon request. The answer also alleges that she obtained a divorce from him in 1909, at which time, as a settlement of their property interests, she promised that she would convey to him the lot after entry of decree of divorce, and that in reliance upon her promise he made no appearance in the divorce proceedings, and no written agreement was made respecting their property interests. These allegations are traversed by reply. The proofs, however, fail to show what agreement was made between defendant and his wife at the time of or prior to the execution and delivery of the deed to her, or even that any agreement was made. Defendant testified that immediately prior to the granting of the divorce she promised him that, if he would not fight the divorce, she would convey to him the premises, together with a half interest in other property held in her name. He also testified that he made demand upon her several times for a conveyance of the lot, and that she put him off from time to time with promises that she would make the conveyance. After the divorce, she married one F. E. Wolf.

Margaret Fleming did not record the deed immediately after receiving it, but held it until March, 1915. On the 14th of March, 1913, defendant, learning that her deed had not been recorded and assuming that it had been lost, procured another deed from Montana Town-Site Company, which deed was issued as a duplicate of the former one, but in the name of defendant. This deed was recorded March 15, 1913. On March 25, 1913, the original deed to Margaret Fleming was recorded. On the 21st of May, 1915, Margaret Wolf, formerly Margaret Fleming, died, and plaintiff was appointed administrator of her estate. By reason of the recording of the deed to defendant, this action was brought.

It is the contention of defendant that, under the facts stated, Margaret Fleming took the title to the premises in trust, and that he is entitled to have the title quieted in himself.

[60 Mont. 246.]

Twelve errors are assigned, but many of them are not entitled to consideration. These insufficient assignments of error [1] involve the rulings of the court upon objections to the introduction of evidence, but each of them fails to point out any specific evidence objected to, or the page or pages of the transcript upon which such rulings can be found. It is altogether too much to expect that this court will go through an entire transcript and pick out rulings that it may conclude that appellant desires to attack by such assignments. The rule requires: "When error alleged is to the admission or to the rejection of evidence, the specification shall quote the full substance of the evidence admitted or rejected." (Rule 10, subd. 3b, 53 Mont. xxxvi, 167 Pac. x.) Reference should also be made to the page of the transcript where the objectionable ruling may be found.

One of the errors assigned is that the court erred in finding that the consideration for the lot was paid by defendant, and that the property was held in trust by Margaret Fleming for defendant. The case may be disposed of upon this assignment of error, and therefore it will be unnecessary to consider any of the other alleged errors.

The alleged agreement whereby Margaret Fleming promised [2] to convey to defendant the lot in consideration of his failure to fight the divorce action was clearly collusion and against public policy, and was therefore void. Even if it be deemed an [3] agreement for a property settlement such as is permissible under the statute, it is likewise void because not in writing. (Rev. Codes, sec. 3695.) Thus no further consideration need then be given to the legal effect of this agreement.

The vital question in the case is whether or not there was [4] created a resulting trust in favor of defendant by reason of the fact that he paid the purchase price of the lot and the expense of improving the same, while the title was taken in the name of his wife. We do not think that the answer sets forth a resulting trust under this theory, but nevertheless will dispose of the question on the merits. Defendant relies upon sec-

tion 4538 of the Revised Codes, which reads as follows: "When a transfer of real property is made to one person, and the consideration thereof is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made." This statutory provision is merely a restatement of the common law; for it has been held from time immemorial that, as a general rule, if one person takes to himself the title of property purchased with the money of another, he takes it charged with a trust in favor of the one who furnished in consideration. This provision is intended to reach those cases whereby one party has violated the confidence or trust reposed in him by another and in buying property has taken title to himself, or wrongfully retained title, when, as a matter of fact, he had no interest therein. It is intended as a protection to the one who makes the actual investment against any fraudulent dealing on the part of one who may be acting for him in the matter. There are, however, exceptions to the rule as stated. If the property is purchased by one with his own money, and the title is placed by him in another to whom he stands in a confidential relation, such as husband, wife, parent, child or such other relation that one may naturally have a claim upon the bounty of the other, then the presumption is that the conveyance is made as a gift. (*Taylor* v. *Miles,* 19 Or. 550, 25 Pac. 143; *Hamilton* v. *Hubbard,* 134 Cal. 603, 51 Am. Dec. note 754, 755, 65 Pac. 321, 66 Pac. 860; *Whitten* v. *Whitten,* 70 W. Va. 422, Ann. Cas. 1915D, 647, 74 S. E. 237, 39 L. R. A. (n. s.) 1026.) See, also, numerous citations in *Lafayette Street Church Society of Buffalo* v. *Norton,* 202 N. Y. 379, 39 L. R. A. (n. s.) 906, 95 N. E. 819. The supreme court of Oregon, in the case of *Taylor* v. *Miles, supra,* considering a similar question, uses this language: "But the presumption that the party paying for the property intended it for his own benefit applies only when the transaction is between strangers, where there is no natural or legal obligation resting on the purchaser to pay the consideration for another. When the purchaser takes the conveyance in the name of his wife, the

sale [rule?] is reversed, and equity raises the presumption that the purchase and conveyance was intended to be an advancement or gift. 'Whenever,' says Mr. Pomeroy, 'the real purchaser—the one who pays the price—is under a legal or even a moral obligation to maintain the person in whose name the purchase is made, equity raises the presumption that the purchase is intended as an advancement or gift, and no trust results.' (2 Pom. Eq. Jur., par. 1039.)''

The supreme court of California, from which state our statute was taken, in the case of *Hamilton* v. *Hubbard, supra,* has given a similar construction to the statute in the following language: ''Ordinarily indeed, where a conveyance is made to one, and the consideration paid by another, a trust is 'presumed' in favor of the latter. (Civ. Code, sec. 853.) But this presumption arises only in transactions between 'strangers to each other' (1 Perry on Trusts, sec. 126), and is not indulged where the conveyance is to the 'wife or child, or other person, for whom (the person paying the consideration) is under some natural, moral, or legal obligation to provide.' In such cases the presumption is 'that the purchase and conveyance were intended to be an advancement for the nominal purchaser.' (1 Perry on Trusts, sec. 143; Hill on Trustees, 97, and note.) The transaction was therefore a gift to Mrs. Hamilton, and, under the express provisions of the Code, her separate property. (Civ. Code, sec. 162.)'' There are some California cases holding that in certain instances this statute is applicable to dealings between husband and wife, parent and child, but in each of those cases there appears a breach of confidence or trust whereby a trust *ex maleficio* results; but we are unable to find any case in which a resulting trust is presumed when a husband voluntarily takes the title in the name of his wife and there has been no breach of faith on her part.

While in such cases the presumption is that the conveyance was intended as a gift, yet it is a rebuttable presumption. In this case, however, there is nothing to rebut this presumption, as the record is entirely devoid of any evidence whatever show-

ing that there was any understanding or agreement between defendant and his wife that the conveyance should not be deemed a gift.

In any case in which it is sought to establish a resulting [5] trust by reason of a conveyance made by or in behalf of a husband to his wife, the evidence establishing such trust relationship should be clear and convincing. It should be practically free from doubt. (10 L. R. A. 401, and notes; *Parker* v. *Newitt,* 18 Or. 274, 23 Pac. 246; *Coe* v. *Coe,* 75 Or. 145, 145 Pac. 674.) This principle is especially applicable where the defendant must establish his case by his own testimony as to oral conversations between himself and his former wife, whose lips are now sealed by death. From our view of the facts of this case, we are not satisfied that defendant's testimony is entitled to full credence. It must be remembered that the deed was made to defendant's wife in 1905, and in 1909 a complete separation took place resulting in an absolute divorce. No articles of separation covering a settlement of property were executed as is customary in property settlements between man and wife who are about to be permanently separated. After [6] the divorce she married another man and continued to live as his wife until 1915, when she died. At no time within the ten years after the delivery to her of the deed, or the six years ensuing after the divorce, did he take any action to enforce any claim against this property. It is true that he testifies that he made several demands upon her for a conveyance of it, but we cannot know whether or not she would admit that he made such demands if she were able to speak, and there is no proof of any kind in corroboration of his story. From the time the deed was delivered to her she took possession of and assumed dominion over the property, paid the taxes on it, rented it, and in every respect treated it as her own, and did nothing in any way acknowledging any interest of defendant in the property, save her possible promise that she would convey it to him, as testified to by him. These circumstances, in our mind, present a condition of laches on the part of defendant that is

inexcusable, if he was in her lifetime claiming in good faith
that he was entitled to this property. The mere fact that he
allowed her to retain the legal title and the actual dominion
of it for her lifetime without substantial question, and then,
upon her death, asserted his claim when he knew that it was
impossible for her to contradict any statement that he might
make, bears the mark of bad faith. This court has considered
a case somewhat similar in principle and expressed itself very
emphatically as to the effect of such laches. (*Riley* v. *Blacker*,
51 Mont. 364, 152 Pac. 758.)    The court in the case cited,
speaking through Mr. Justice Sanner, used this language:
''Laches, considered as a bar independent of the statute of limi-
tations, is a concept of equity; it means negligence in the asser-
tion of a right; it is the practical application of the maxim,
'Equity aids only the vigilant'; and it exists when there has
been unexplained delay of such duration or character as to ren-
der the enforcement of the asserted right inequitable. There-
fore has it often been held by this court that, while a mere
delay short of the period of the statute of limitations does
not of itself raise the presumption of laches (*Wright* v. *Brooks*,
47 Mont. 99, 130 Pac. 968; *Parchen* v. *Chessman*, 49 Mont.
326, Ann. Cas. 1916A, 681, 142 Pac. 631, 146 Pac. 469; *Brundy*
v. *Canby*, 50 Mont. 454, 148 Pac. 315), yet 'good faith and
reasonable diligence only can call into activity the powers of a
court of equity, and, independently of the period fixed by the
statute of limitations, stale demands will not be entertained or
relief granted to one who has slept upon his rights. Considera-
tions of public policy and the difficulty of doing justice be-
tween the parties are sufficient to warrant a court of equity in
refusing to institute an investigation, where the lapse of time
in the assertion of the claim is such as to show inexcusable
neglect on the part of the plaintiff, no matter how apparently
just his claim may be; and this is particularly so where the
relations of the parties have been materially altered in the
meantime.' (*Kavanaugh* v. *Flavin*, 35 Mont. 133, 88 Pac. 764;
*Streicher* v. *Murray*, 36 Mont. 45, 92 Pac. 36; *Brundy* v. *Can-*

*by, supra.*)   What constitutes a material change of condition has been the subject of much judicial discussion and some judicial dissension; but, whatever doubt there may be as to the other circumstances, it never has been questioned, to our knowledge, that the death of one of the parties to the transaction is such a change.''

Defendant has so slept on his rights, if he ever had any, that his contention utterly fails to appeal to the sense of justice and equity of this court.

The judgment and order overruling motion for a new trial are reversed, and the cause is remanded to the district court, with directions to enter judgment for plaintiff pursuant to the prayer of the complaint.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN concur.