# Campbell's Estate.

*Decedents' estates—Gift—Gift inter vivos—Delivery—Presumption—Evidence—Witness—Party dead—Act of May 23, 1887, P. L. 158.*

1. To constitute a valid gift inter vivos there must be a purpose to give, and the gift must be executed by actual delivery to the donee or to some one for his use.

2. Where a decedent shortly before his death draws a check in favor of his brother for the exact amount of his deposit in a savings bank and declares to the person who witnessed the check that he wanted his brother to have the money, and directs that the check and bank book shall be put in an envelope addressed to his brother at the latter's post office, and placed in his (decedent's) satchel, and the brother presents the check for payment the day after decedent's death, the check will be considered a gift inter vivos, if the evi-

dence shows that there was no possibility that the brother obtained the check after the decedent's death.

3. Where the relation of the parties is such as here appears, mere possession of personal property shown to have formerly belonged to another is not of itself sufficient to raise a presumption that title was transferred.

4. In such case, where the money is paid to decedent's executor, the brother may assert a claim for the amount at the audit of the executor's account.

5. Not decided whether the brother was a competent witness under the Act of May 23, 1887, P. L. 158, to testify that he visited his brother before his death, and received from him the check in question.

Argued May 9, 1922. Appeal, No. 369, Jan. T., 1922, by Ruth Campbell Bryson, from decree of O. C. Fayette Co., Dec. T. 1919, No. 60, dismissing exceptions to adjudication, in estate of W. E. Campbell, deceased. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Exceptions to adjudication. Before WORK, P. J.
The opinion of the Supreme Court states the facts.
Exceptions dismissed. Ruth Campbell Bryson appealed.

*Error assigned,* inter alia, was decree, quoting it.

*H. E. Hackney,* with him *E. C. Higbee,* of *Sterling, Higbee & Matthews,* for appellant.—Whether the claimant's theory of recovery be that of a gift inter vivos, or that of an equitable assignment, the rule as to the burden of proof is the same: The burden of proof is upon the one who claims the benefit of the gift or assignment to prove all the facts essential to the validity of such a gift or assignment by evidence that is clear and convincing: Maxler v. Hawk, 233 Pa. 316; Sullivan v. Hess, 241 Pa. 407; Bergner's Est., 244 Pa. 526; Gongaware's Est., 265 Pa. 512.

The evidence in this case is not sufficient to prove a gift inter vivos to the claimant: Reese v. Phila., etc., Co., 218 Pa. 150; Walsh's App., 122 Pa. 177; McHale v. Toole, 258 Pa. 293; Cooper's Est., 263 Pa. 37; Packer v. Clemson, 269 Pa. 1; Smith's Est., 237 Pa. 115; Turner's Est., 244 Pa. 568.

*E. Dale Field,* for appellee.—The execution of the check for the full amount of his savings bank deposit and his delivery of the same, together with his bank book relating thereto, by decedent in his lifetime to claimant, constituted a valid gift inter vivos: Bond v. Bunting, 78 Pa. 210; Sourwine v. Claypool, 138 Pa. 126; Michener v. Dale, 23 Pa. 59; Osterhout's Est., 148 Pa. 223; Sullivan v. Hess, 241 Pa. 407; Leitch v. Bank, 234 Pa. 557; Kulp v. March, 181 Pa. 627; Smith's Est., 237 Pa. 115; Waite v. Grubbe, 43 Ore. 406; Parker's Est., 15 Pa. C. C. R. 7; Pier v. Duff, 63 Pa. 59.

Claimant's possession, under such conditions as disclosed by the evidence, thus becomes prima facie evidence of his ownership of his gift—because the presumption is that it was honestly acquired: Maxler v. Hawk, 233 Pa. 316. Such possession was unquestionably more than mere possession, and thus measures up to the legal requirements: Reading Trust Co. v. Thompson, 254 Pa. 333; Am. Ex. Nat. Bank v. Bank, 226 Pa. 483; Wagoner's Est., 174 Pa. 558.

There was an equitable assignment of the fund involved: Watson v. Bagaley, 12 Pa. 164; Jermyn v. Moffitt, 75 Pa. 399; Com. v. Ins. Co., 162 Pa. 586.

OPINION BY MR. JUSTICE SCHAFFER, June 24, 1922:

W. E. Campbell, out of the distribution of whose estate the present controversy arises, died December 18, 1918, leaving a will, bequeathing all his property to a daughter, Ruth C. Bryson. On December 5, 1918, being sick in Pittsburgh with the illness from which he subsequently died, he asked a friend named Richards, who had called

to see him, to witness a check which he, Campbell, had drawn on a savings bank in favor of his brother, A. Earl Campbell (appellee), for four thousand dollars, representing the exact sum on deposit to the drawer's credit. That the check should be witnessed was a requirement of the bank. Richards witnessed it and put it and the bank book showing the deposit in an envelope addressed to appellee at Akron, Ohio, where he lived, sealing the envelope and placing it in decedent's satchel by his direction. Richards testified the decedent said to him "He wanted Earl to have the money, as Earl was married and settled down and he wanted him to buy a home." Richards advised decedent that the medium of a check was not the right way to accomplish this purpose, and that if he wanted his brother to get the money the check called for, the matter should be put in some other shape, that if the check was presented after his death, payment would be stopped on it, to which decedent replied "He will get it all right if he keeps his mouth shut," the deceased asserting that neither his daughter nor sister would make any trouble. He further said that when he told the decedent he ought not to leave the check in the satchel, the latter replied, "Yes, they will get it there."

The evidence discloses nothing further with reference to the check or pass book after it was placed in decedent's satchel by Richards on December 5th until it was presented to the bank in Pittsburgh on which it was drawn by A. Earl Campbell on December 19, 1918, the day following decedent's death, on his way through Pittsburgh from Akron to attend the funeral.

A. Earl Campbell claimed in the court below the check was a gift inter vivos to him by his brother of the sum it represented, or, if not a gift, that, being for the exact amount of the deposit, the check constituted an equitable assignment. The amount of the check, with interest, aggregating about half of the estate, was awarded to claimant, the court rightly holding that, as the deposit

had been collected by the executors and constituted part of the fund for distribution, it had jurisdiction to determine the question whether the money had been given to appellee: Cooper's Est., 263 Pa. 37.

To maintain his claim to the deposit, appellee necessarily relies upon the delivery of the check to him by the decedent in his lifetime. "Without a complete delivery during the lifetime of the donor, there can be no valid gift inter vivos. Though every other step be taken that is essential to the validity of the gift, if there is no delivery, the gift must yield. Intention cannot supply it; words cannot supply it, actions cannot supply it; it is an indispensable requisite, without which the gift fails, regardless of consequence": 2 Thornton on Gifts, page 105. Ordinarily mere possession of the property is not sufficient evidence of a gift, for this may be consistent with a mere custody or agency: Reading Trust Co. v. Thompson, 254 Pa. 333, 337. "A gift may be defined as a voluntary transfer of a chattel completed by the delivery of possession. It is the fact of delivery that converts the unexecuted and revocable purpose into an executed and therefore irrevocable contract......There must be a purpose to give......and it must be executed by the actual delivery of the thing given to the donee or some one for his use": Cooper's Est., 263 Pa. 37, 46. To establish a gift inter vivos, two essential elements must be made to appear; an intention to make the donation then and there, and an actual or constructive delivery at the same time, of a nature sufficient to divest the giver of all dominion, and invest the recipient therewith: Yeager's Est., 273 Pa. 359; Northern Trust Co. v. Huber, 274 Pa. 329. Where the relation of the parties is such as here appears, mere possession of personal property shown to have formerly belonged to another is not in itself sufficient to raise a presumption that title was transferred: Ibid.

After December 5th, when Richards put the check and deposit book in the satchel of decedent, and before De-

cember 15th, the latter was taken from Pittsburgh to a sanitarium at Cresson, where his brother testified, under objection, he visited him on December 15th. Out of the incident of this visit, to which no one but the claimant testified, and from the circumstance that he, the appellee, went directly from Cresson to his home in Akron, where he remained until he received word of his brother's death, and from the further fact that on his way through Pittsburgh to decedent's funeral, on December 19th, he presented the check to the drawee bank, which refused payment, the claimant seeks to sustain the inference drawn by the court below, that decedent delivered the check to him and thus made an executed gift of it on the occasion of his visit to the former at Cresson on December 15th. The court ruled that appellee was incompetent to testify as to what took place at the time of the above visit, but that he could state the fact of the visit. It is strongly argued that claimant was not a competent witness under the Act of May 23, 1887, P. L. 158, Purdon 1495, section 34,—which provides: "Nor where any party to a thing or contract in action is dead......and his right thereto or therein has passed......to a party on the record, who represents his interest in the subject in controversy, shall any surviving or remaining party to any such thing or contract......be a competent witness to any matter occurring before the death of said party,"—to testify even to the fact that he had visited his brother prior to the latter's death, and thus to lay the foundation for the inference of delivery of the check.

Were we compelled to pass upon this question in order to decide the case, it would not be free from difficulty, as we have held that a witness under this act is incompetent to testify concerning "any matter occurring before the death of the other party" (Sutherland v. Ross, 140 Pa. 379; Arrott v. Way Mfg. Co., 143 Pa. 435; Crothers v. Crothers, 149 Pa. 201; Baldwin v. Stier, 191 Pa. 432; Myers v. Litts, 195 Pa. 595; Brown v. Marmaduke, 248 Pa. 252); but we are not called on to decide it, because

there is sufficient evidence in the case, without considering the circumstance of the visit by claimant, to warrant the inference that the check was delivered in pursuance of the decedent's intention to make a gift to the claimant as testified by Richards.

In McConville v. Ingham, 268 Pa. 507, 519, we held that the endorsement of a check absolute in form is sufficient to give rise to a presumption of a gift of the check. A stronger presumption arises from the drawing of a check to the order of one who sets up a gift of it. Under the testimony of Richards, there can be no question but that the decedent intended his brother should receive the money represented by the check. The circumstances occurring subsequent to the death of the decedent,—the fact that appellee at the time of his brother's death was in Akron and that the day after the death, without having thereafter been at decedent's home or at the place where he died, appellee presented the check at the bank on which it was drawn,—negative the idea that claimant obtained the check after the brother's death and support the contention that it came into his possession prior thereto, and this without considering appellee's own testimony of his visit to the decedent at Cresson. The case at bar is readily distinguishable from Isett v. Maclay, 265 Pa. 165, in which the testimony disclosed no possibility of delivery of the note there in question before the death of the maker.

Mrs. Bryson, the appellant, recognized the validity of the gift, as is shown by the uncontradicted testimony of appellee that he had a conversation with her after decedent's death, when he turned over to her the check and bank book in question and three other bank books belonging to decedent, then in his possession; at which time appellant told him she was willing the check should be paid, and he gave it to her with the understanding that she was to hand it to the trust company, which was her coexecutor, and they were to pay it.

The decree of the court below is affirmed at the cost of the appellant.