ANGELINA DETRA, ALSO KNOWN AS ANGIE DETRA, JOSEPHINE JERMAN, FORMERLY KNOWN AS JOSEPHINE SVALDI, SOMETIMES KNOWN AS JOSEPHINE SAVOLDI, AND MARCELLA MIRABELLA, PLAINTIFFS AND APPELLANTS, *v.* EDWARD A. BARTOLETTI, LOUIS BARTOLETTI, AND EDWARD A. BARTOLETTI, AS ADMINISTRATOR OF THE ESTATE OF EDDIE BARTOLETTI, DECEASED, DEFENDANTS AND RESPONDENTS.

No. 11240.
Submitted September 12, 1967. Decided November 6, 1967.
433 P.2d 485.

Holland and Holland, and Leonard J. Haxby, David Holland (argued), Butte, for appellants.

Corette, Smith, Dean and Robischon, Kendrick Smith (argued), Butte, for respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment entered on a verdict for the defendants in an action brought in the District Court of Silver Bow County to recover money and personal property allegedly belonging to the estate of Eddie Bartoletti, deceased. The action was brought by the sisters of the decedent against Louis Bartoletti, the brother of the decedent, and Dr. Edward

A. Bartoletti, the son of Louis Bartoletti, in his individual capacity and as administrator of the estate.

Eddie Bartoletti died in 1963. He had never married. Louis Bartoletti and Eddie Bartoletti had been engaged in various businesses together for approximately 33 years in and around Butte, Montana, and Las Vegas, Nevada. In their business no record was ever kept of the amount each took out of the business, they each just took what they needed. The decedent could neither read nor write English, although he could write his name.

The last business of the two brothers was the Acoma Lounge, Inc., in Butte, Montana. Each brother originally had a one-third interest in the corporation. The remaining one-third was owned by James Troglia. After the death of Eddie Bartoletti, Louis Bartoletti produce the certificates covering the shares of Eddie Bartoletti in the Acoma Lounge, Inc., stock on which the assignments had been executed by Eddie Bartoletti to Louis Bartoletti. Louis Bartoletti testified that in October of 1960 his brother Eddie, the decedent, in the kitchen of a house located at 3500 Wilson Street in Butte, Montana, at a time when he and the decedent were alone in the kitchen, the decedent handed him a will and the Acoma Lounge stock and that the decedent then stated: "This is yours, remember this. Everything is yours if something happens to me. And he handed me the stocks and said this is yours, if anything happens I want you to have everything." This stock was not included in the estate of the decedent.

The will that Louis Bartoletti mentioned as being given to him devised Eddie's real property to Louis, and divided the residue of the estate into four equal parts, one-fourth to Louis and one-fourth to each of three sisters. This disposition would not support the alleged conversation between decedent and his brother Louis as before related.

Evidence was introduced to show that after this alleged gift the decedent remained a director of the corporation; that he

actually worked in the business of the corporation after the alleged gift; and that decedent and his brother Louis purchased the Acoma Hotel at sometime previous to April of 1961 under a contract and on April 17, 1961, the brothers paid off the seller's equity in the contract, amounting to the sum of $24,873.83. Louis Bartoletti testified that he told no one of the alleged gift except James Troglia, until after the death of Eddie. Troglia denied that he ever told him about it or that he ever heard anything about it until after the death of decedent.

From this recitation it is apparent that the alleged gift of the Acoma corporate stock rests entirely upon the unsupported testimony of the donee, Louis. Contra to this is the undisputed continued business activity of the deceased Eddie. More will be said about this later in the discussion of the issues.

While the decedent knew nothing about the stock market, his nephew, Dr. Bartoletti, helped him with some investments in the stock market. Although he did not have a power of attorney to handle the transactions of his uncle, Dr. Bartoletti had complete discretion to buy and sell his uncle's stock Eddie Bartoletti had signed some stock certificates in blank and given them to his nephew, Dr. Bartoletti, to facilitate sales.

In August 1963, while the decedent was in the hospital following a second operation for a brain tumor, Dr. Bartoletti, while visiting him in the hospital, told the decedent that there were a lot of medical bills and that he was going to sell the stock to pay these bills. At that time he had the decedent sign some shares with an "X" for the decedent had lost the power to write, was paralyzed in the right side and had lost the power of speech. Dr. Bartoletti testified that the decedent could make himself understood by nodding his head and by squeezing the Doctor's hand. Hospital records indicated that the decedent was given heavy sedation during the entire month of August of 1963.

Dr. Bartoletti sold the stock, some of which had been signed

in blank and some with an "X." The proceeds of the stock, $4,449.45, he then turned over to his father, Louis Bartoletti.

Approximately two weeks later Dr. Bartoletti filed a petition to have the decedent declared an incompetent, but Eddie Bartoletti died before the petition was acted upon.

After Eddie Bartoletti's death Louis Bartoletti submitted a claim against the estate for medical expenses he claimed to have paid for the decedent. This claim was approved by the administrator of the estate, Dr. Bartoletti. It does not appear that any credit was given for or that any portion of the proceeds of the sale of stock went to pay any medical bills of the decedent.

Decedent received $118 per month from disability coverage under Social Security but Louis Bartoletti did not recall when his brother started to draw such payments. There also was mention of Blue Cross and Blue Shield payments but no definite amounts were provided.

This suit was brought to recover the one-third stock interest in the Acoma Lounge, Inc., and the proceeds of the sale of stock for the estate of Eddie Bartoletti. The defendants contend that the transfers to Louis Bartoletti were gifts. The jury found for the defendants.

The appellants claim basically two issues on this appeal.

The first contended issue is that the court should not have given the following instruction to the jury, to-wit: "You are instructed that where there is a transfer between persons having a close blood relationship, or near relatives, such a transfer is presumed to be a gift."

The second is that the defendant did not prove that the transfers were gifts with clear, convincing, strong and satisfactory evidence.

As suggested heretofore, as to the Acoma Lounge stock, without the donee's testimony as to the assignment of the stock certificates, no evidence was produced as to the gift. Necessarily then, the instruction complained of in issue num-

ber one, that a presumption of a gift arose, was most important.

Then too, issues number one and two became interwoven because the burden of proof shifted if such a presumption of gift arose.

As to the first contention the presumption of gifts between close relatives was first adopted by this court in the case of Clary v. Fleming, 60 Mont. 246, 198 P. 546 (1921). It has subsequently been applied in many Montana cases. Bast v. Bast, 68 Mont. 69, 217 P. 345 (1923); McQuay v. McQuay, 81 Mont. 311, 263 P. 683 (1928); Roman v. Albert, 81 Mont. 393, 264 P. 115 (1928); Humbird v. Arnet, 99 Mont. 499, 44 P.2d 756 (1935); McLaughlin v. Corcoran, 104 Mont. 590, 69 P.2d 597 (1937); Bingham v. National Bank of Montana, 105 Mont. 159, 72 P.2d 90 (1937); Lewis v. Lewis, 109 Mont. 42, 94 P.2d 211 (1939); Lewis v. Bowman, 113 Mont. 68, 121 P.2d 162 (1942); Emery v. Emery, 122 Mont. 201, 200 P.2d 251 (1948); In re Kuhr's Estate, 123 Mont. 593, 220 P.2d 83 (1950); Marans v. Newland, 141 Mont. 32, 374 P.2d 721 (1962).

It should be noted before we proceed further than at its inception in Montana, the presumption was more restrictive than the court's instruction stated.

Clary v. Fleming, supra, dealt with a situation where a husband paid certain sums of money to purchase a lot; that no consideration was paid by the wife; that the deed was issued to the wife under an agreement that the wife would convey the lot to the husband at any time upon his request. The husband and wife were later divorced, the wife died, and the action was brought by her administrator to eject the former husband from the lot. The defendant relied upon section 4538, Revised Codes of 1907, now section 86-103, R.C.M.1947, which reads: "When a transfer of real property is made to one person, and the consideration thereof is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."

In discussing this statute this court in the Clary case, 60 Mont. at 250, 198 P. at 547, stated:

"This statutory provision is merely a restatement of the common law; for it has been held from time immemorial that, as a general rule, if one person takes to himself the title of property purchased with the money of another, he takes it charged with a trust in favor of the one who furnished in consideration. This provision is intended to reach those cases whereby one party has violated the confidence or trust reposed in him by another and in buying property has taken title to himself, or wrongfully retained title, when, as a matter of fact, he had no interest therein. It is intended as a protection to the one who makes the actual investment against any fraudulent dealing on the part of one who may be acting for him in the matter. There are, however, exceptions to the rule as stated. If the property is purchased by one with his own money, and the title is placed by him in another to whom he stands in a confidential relation, such as husband, wife, parent, child *or such other relation that one may naturally have a claim upon the bounty of the other,* then the presumption is that the conveyance is made as a gift." (Emphasis ours.)

Turning to the situation apparent in this case from the evidence, what claim did Louis Bartoletti have upon the bounty of his brother, Eddie? The evidence is clear that they both took from the assets of their undertakings such cash as they each needed, no effort was made to account to each other in any manner. Louis had a family, educated his son, Dr. Bartoletti, as a dentist; Eddie had no similar family expense.

In all the cases in which it has been applied in this jurisdiction, the purported gifts have been within relationships of husband and wife or parent and child. No cases have arisen involving siblings, and from our obesrvations heretofore there is here no satisfactory convincing proof that the sibling relationship is such as to establish Louis as a natural object of the bounty of Eddie.

Other jurisdictions have dealt with cases involving brothers and sisters. Irvine v. Minshull, 60 Colo. 112, 152 P. 1150; In re Campbell's Estate, 274 Pa. 546, 118 A. 547 (1922) and Harris v. McIntyre, 118 Ill. 275, 8 N.E. 182, are all cases in which the courts rejected the presumption between brothers and sisters. In re Campbell's Estate is significant in that the court rejected the presumption between brothers and then found that the party asserting the gift had carried his burden of proof and established the gift.

We find that the line of cases rejecting the presumption when the transfer is between brothers are the better reasoned decisions. The determining question is whether with proof of the sibling relationship and no further evidence, logic and experience would say the transfer was intended to be a gift. We cannot answer yes to that question. In the husband-wife and parent-child relationships if there was no evidence except the status of the parties it would be the unusual case where a gift was not intended. Although in many of the transfers between brothers and sisters a gift may be intended, this court is not prepared to hold that it is only the unusual case in which a gift is not intended.

The presumption of gift which applies to transfers between husband and wife and parent and child is rebuttable and only carries the burden of proof of the party asserting the gift. At best the sibling relationship should only be one of the factors to be taken into account in determining whether the party asserting the gift has carried his burden of proof. We therefore hold that the presumption does not apply to transfers between siblings.

The second contention on this appeal is whether in the absence of the presumption the defendants have carried their burden of proof. The general rule is that the burden of establishing the gift is on the donee. Lyons v. Freshman, 124 Mont. 485, 226 P.2d 775. Where the defendants allege in their answer that the articles in question were given by the dece-

218

dent the burden of establishing the fact is on the defendants. Stagg v. Stagg, 90 Mont. 180, 187, 300 P. 359. The burden is one of establishing the gift by clear, convincing, strong and satisfactory evidence. It is to be done with more than a mere preponderance of the evidence. In re Brown's Estate, 122 Mont. 451, 206 P.2d 816.

We find that the defendant has not proved with clear, convincing, strong and satisfactory evidence that the decedent, Eddie Bartoletti, intended to make a gift to Louis Bartoletti of the one-third interest in the Acoma Lounge, Inc. There were no witnesses to the transaction. The alleged transfer was not disclosed by Louis Bartoletti until approximately three years after the purported gift and then only after the death of Eddie Bartoletti, the purported donor. Louis Bartoletti states he told no one about the gift except James Troglia. James Troglia denies being told. Eddie Bartoletti and Louis Bartoletti had such a confidential relationship that there are other possible explanations for the possession by Louis of the signed stock certificates. These possibilities were not satisfactorily negated by defendants' evidence. 24 Am.Jur., Gifts, §§ 49, 132, 133.

As we have heretofore observed, the second contention is necessarily interwoven with the first. Because we have found that the instruction complained of was improper, our discussion of the proof concerned with the second issue is directed to the new trial required in this cause.

As to the proceeds of the sale of stock of $4,449.45, the defendants did not establish with clear, convincing, strong and satisfactory evidence that a gift was intended. According to the testimony of Dr. Bartoletti the amount was supposed to be used to pay medical bills. Since the medical bills were paid by the estate and not by Louis Bartoletti this tends to dispute the testimony of Dr. Bartoletti.

One further point remains. The plaintiffs contend that the court erred in failing to give the jury the following instruction:

"You are instructed that a director of a Montana corporation must be a stockholder of said corporation."

This statement is what our statute, section 15-401, R.C.M. 1947, says. It provides in part: "The corporate powers, business, and property of all corporations formed under this title must be exercised, conducted and controlled by a board of not less than three (3) directors, to be elected from among the holders of stock * * *. Directors of corporations for profit must be holders of stock therein * * *." The instruction should have been given.

As appears from our discussions heretofore this case presents issues which should be decided by a jury under proper instructions from the court, and because of the errors in the giving and refusing of the instructions the judgment must be reversed and a new trial granted.

It is so ordered.

MR. JUSTICES HASWELL, ADAIR, CASTLES and JOHN CONWAY HARRISON concur.