No. 84-92

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

_____

DONA B. PETERSON,

       Plaintiff and Respondent,

  -vs-

DONNA KABRICH,

       Defendant and Appellant.

_____

APPEAL FROM:  District Court of the Tenth Judicial District,
In and for the County of Fergus,
The Honorable Peter L. Rapkoch, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Torger S. Oaas argued, Lewistown, Montana

    For Respondent:

        Craig R. Buehler argued, Lewistown, Montana

_____

Submitted: September 20, 1984

Decided: November 28, 1984

Filed: NOV 28 1984

*Ethel M. Harrison*
_____
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Donna Kabrich appeals from an order of the Tenth Judicial District Court, Fergus County, directing her to transfer title to certain real property in Fergus County, Montana, into the name of the respondent, Dona Peterson. We affirm the decision of the District Court.

The respondent, Dona Peterson, is a retired school librarian living in El Paso, Texas. She is a widow, and her immediate family at the time this action accrued consisted of her sister, Etta Trankle, and three nephews. Del Kabrich was one of these nephews, and the son of Etta Trankle. The appellant, Donna Kabrich, was married to Del Kabrich. Sometime after her husband died in 1978, respondent added Del Kabrich's name to a joint tenancy signature card for her checking account, number 726-015-8, at First State Bank in El Paso, Texas. Peterson mailed the signature card to Kabrich, who signed it and returned it by mail to Peterson. This was apparently done in hopes of facilitating the administration of her estate upon her death. Respondent had designated Del Kabrich the administrator of her estate in her will because he had a law degree and business experience. All of the money in account 726-015-8 was deposited by the respondent, who also exercised exclusive control over the account.

The Kabriches rented a home in Lewistown, Montana. In June of 1980, Del and Donna Kabrich were advised by their landlord in Lewistown, Montana, that they must either buy the home they were renting, or move out. The Kabriches discussed their predicament with the respondent, and on June 24, 1980, respondent transferred $10,000 from account number 726-015-8 to Del Kabrich, which was used as a down payment on the

2

property. The balance of the purchase price, $20,000, was transferred from the account on July 10, 1980, to Del Kabrich. Title to the Lewistown property was transferred to Del and Donna Kabrich. On July 15, 1980, respondent advanced an additional $4,200 to the Kabriches for the purpose of making improvements on the property. There is no written agreement concerning the nature of the transfer between respondent Peterson and her nephew, Del Kabrich. The only written evidence of the transaction consisted of two letters allegedly written by Del Kabrich.

The first, dated January 10, 1981, is a typewritten note allegedly from Kabrich to his mother, Etta Trankle, acknowledging the transfer as a loan from respondent. It is signed simply "Jr.", Kabrich's nickname. A handwriting expert for the defendant-appellant concluded the letter was a forgery after defendant entered the letter into evidence. The second letter, acknowledged to be handwritten by Del Kabrich to his aunt, the respondent, detailed the financial status of the Kabriches as of February 19, 1981. The letter ended by tendering a $500 payment to respondent, although no mention was made of any loan.

In September, 1981, Del Kabrich died. Title to the Lewistown property passed to Donna Kabrich alone. Respondent made several demands of appellant to the effect that she make some arrangement to repay the $34,200 transfer, alleged by respondent to be a loan. Appellant resisted, maintaining that the transfer was a gift. On April 28, 1982 the respondent filed an action against appellant in District Court, alleging that the entire transfer of funds from her checking account to purchase the Lewistown property was a loan, which appellant had refused to acknowledge or repay.

The prayer requested a decree ordering Kabrich to transfer title in the Fergus County property to Peterson. A trial was held on September 19, 1983, before the Honorable Peter Rapkoch, sitting without a jury. On November 18, 1983, the court entered its findings of fact and conclusions of law. The court found that no gift was intended by the $34,200 transfer, that a resulting trust had arisen in favor of the plaintiff, and that plaintiff was entitled to have the property transferred into her name. On the same day, the court issued its order requiring Donna Kabrich to transfer title in the Lewistown property to Peterson, and from this order Kabrich appeals.

The first issue raised by appellant is whether the District Court erred in failing to find that the transfer of funds from Peterson to Del Kabrich was a gift under Montana law regarding joint tenancy bank accounts.

Appellant contends that under Montana law, the addition of Del Kabrich's signature to the signature card for Peterson's checking account created a gift of the monies held in that account. In order to constitute a gift, the addition of a party's signature to a bank account signature card must satisfy all the requirements of a gift inter vivos: (1) delivery; (2) donative intent; (3) acceptance by the donee. State Board of Equalization v. Cole (1948), 122 Mont. 9, 14, 195 P.2d 989, 992. Thus the question here is whether Peterson intended to make a gift of the funds in her checking account when she added her nephew's name to the signature card. The language on the signature card is quoted below:

> "I or we in making this deposit and at all times in doing business with this bank, specifically agree to all of the terms and conditions printed on the reverse side hereof.

4

"The above entitled joint account deposited by us, or either of us, and all moneys credited to the same, or heretofore or hereafter credited, is by mutual agreement payable to either of the undersigned, or the survivor or survivors of them. The receipt or acquittance by any one of the undersigned, to whom such payment is made, shall be valid and sufficient release and discharge to said bank for all payments made."

It is true, as appellant argues, that Montana cases have held that "signing a signature card containing an agreement that the deposit is payable to either of the co-depositors or the survivor settles the question of donative intent to make a joint tenancy." Casagranda v. Donahue (1978), 178 Mont. 479, 483, 585 P.2d 1286, 1288; Cole, 122 Mont. at 15, 195 P.2d at 992. However, when the donor-depositor raises the issue of donative intent during his or her lifetime, the language on the signature cards is not conclusive evidence that a gift was intended. Anderson v. Baker (Mont. 1982), 641 P.2d 1035, 1038, 39 St.Rep. 273, 276-77. In Anderson, the donor added her son's name as joint tenant to a savings account and two certificates of deposit, and delivered the passbook and certificates to him. Later, she demanded their return and her son refused to comply. The donor filed a complaint praying for the return of the documents and for the removal of her son's name from them. Both sides moved for summary judgment and the trial court awarded each one-half of the total amount on deposit. The donor appealed, and in reversing the district court this Court held as follows:

"[W]here . . . a depositor during his or her lifetime raises the issue of ownership of funds in a joint tenancy account, the statements on the signature card are not conclusive and additional evidence may be examined to ascertain the true intent of the parties . . .

5

" . . .

> ". . . We are also mindful that the signature cards are forms containing language drafted by the depository institution. While the language thereon may very well describe the agreements between the depositor and the depository, it can hardly be expected to accurately express the intentions and relationships between the joint tenants about which the depository typically has little, if any knowledge. Where the donor-depositor, as in the instant suit, indicates during her lifetime that her intent is other than that revealed on the signature card, we hold such evidence admissible."
> Anderson, 641 P.2d at 1038, 39 St.Rep. at 276-77.

Here, the donor is still alive, and testified at length at trial. She testified that by having her nephew sign the signature card, she hoped to promote an uncomplicated administration of her estate following her death. This hope was based on her belief that Del Kabrich had greater business and legal experience than any other of her close relatives. In addition, Peterson emphatically testified that none of the money was intended as a gift. Rather, it was considered a loan with expectation of repayment. Peterson's understanding in this regard was based to a certain extent on an earlier loan from her to Kabrich, made when he mustered out of the armed forces. That loan, used to purchase an automobile, was repaid in full by Kabrich.

Peterson also presented testimony that she had loaned money to another nephew to purchase real estate under a similar arrangement, i.e. there was no writing formalizing the loan, the debtor nephew having simply agreed to repay the money as he was able. This loan was being repaid according to the oral agreement, and Peterson testified that she expected the same result when she transferred funds to Del Kabrich to purchase the Lewistown property.

The Anderson rule clearly applies here.  We find that the addition of Del Kabrich's signature to the signature card of Peterson's checking account is insufficient evidence to overcome Peterson's testimony that there was no donative intent to make a gift.

The appellant's second issue is whether the transfer of funds from the respondent to her nephew, Del Kabrich, raised a presumption that the transfer was intended as a gift.

Section 72-24-104, MCA provides: "When a transfer of real property is made to one person and the consideration thereof is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."

This presumption, however, is supplanted by a rebuttable presumption of gift in those cases where the parties stand in close relation to one another, such as husband and wife, or parent and child.  Platts v. Platts (1959), 134 Mont. 474, 480-81, 334 P.2d 722, 727; Clary v. Fleming (1921), 60 Mont. 246, 198 P. 546. We have refused to extend the presumption to more distant relationships than those mentioned above.  See Detra v. Bartoletti (1967), 150 Mont. 210, 433 P.2d 485 (denying extension of presumption of gift to the unexplained transfer of property between siblings).

However, the appellant argues that Peterson stood in loco parentis to Del Kabrich, and that relationship should trigger the presumption of gift.

The trial court specifically found that no in loco parentis relationship existed between Peterson and Del Kabrich.  The trial court's findings will not be disturbed when supported by substantial evidence.  Poepping v. Monson

7

(1960), 138 Mont. 38, 43, 353 P.2d 325, 328. Here, there was ample evidence upon which the trial court could base its finding. In order to stand _in loco parentis_ to another, a person must intentionally assume the status of a parent by accepting those responsibilities and obligations incident to the parental relationship without benefit of legal adoption. Fevig v. Fevig (N.M. 1977), 559 P.2d 839, 841. See also In re Marriage of Allen (Ct.App.Wash. 1981), 626 P.2d 16, 21; Workman v. Workman (Okla. 1972), 498 P.2d 1384, 1386.

Evidence before the District Court indicated that although Peterson was close to all three of her nephews, she never assumed any parental obligations toward Del Kabrich. Their relationship was limited to occasional visits and the exchange of letters and Christmas gifts. At the time the transfer was made, Del Kabrich was a grown man, and he lived in close contact with his actual mother. With the exception of a loan from Peterson to Kabrich made when he left the armed forces (which was repaid), there is no indication in the evidence that Peterson had ever attempted or intended to assume the status of parent with respect to Del Kabrich. The trial court's finding that no _in loco parentis_ relationship existed between Del Kabrich and the respondent was supported by substantial evidence, and therefore will not be disturbed.

Since no presumption of gift arose under the facts of this case, and because it is evident that Peterson advanced the entire purchase price of the Lewistown property while title passed to Del and Donna Kabrich, a resulting trust in favor of Peterson is presumed. Section 72-24-104, MCA; _Poepping_, 138 Mont. at 46-47, 353 P.2d at 330; First State Bank of Philipsburg v. Mussigbrod (1928), 83 Mont. 68, 92, 271 P. 695, 704. The presumption is rebuttable, McQuay v.

McQuay (1928), 81 Mont. 311, 320, 263 P. 683, 686, and the only remaining issue is whether the appellant sustained her burden of proof in overcoming the statutory presumption. Absent a presumption of gift, the appellant must establish that a gift was made by "clear, convincing, strong and satisfactory evidence . . . more than a mere preponderance of the evidence." Detra, 150 Mont. at 218, 433 P.2d at 489.

In the instant case, the evidence offered by the appellant falls short of establishing a gift by clear, convincing, strong and satisfactory evidence. An examination of the trial transcript reveals that Peterson understood the transfer of funds to be a loan, to be repaid by her nephew and appellant as they were able. As discussed above, this understanding was based in part on prior dealings between Peterson and her nephews. Peterson also introduced into evidence without objection a February 19, 1981, letter written by Del Kabrich to her discussing the Lewistown property, detailing Kabrich's financial affairs at the time, and then tendering an unexplained payment of $500. At the trial, respondent maintained that she understood the $500 to be a repayment on the money she advanced to pay for the Lewistown property. Appellant, however, maintained that the unexplained $500 payment was rather a "token of good will," and that the transfer of funds had been intended as a gift. As further proof that the transfer was originally intended to be a gift, appellant maintains that Peterson attempted to introduce a forged letter at trial, supposedly from Del Kabrich to his mother, Etta Trankle, which referred to the money used to purchase the Lewistown property as a "loan" from Peterson.

Testimony during the trial indicated that the appellant and her mother-in-law had a stormy relationship. In fact, Trankle had sued appellant following her son's death to prevent appellant from ousting Trankle from the Lewistown property, where she was residing.

The record also indicates that Etta Trankle died in November of 1982, and shortly thereafter her personal representative discovered the letter, dated January 10, 1981, in Trankle's purse. The letter was turned over to the attorney for Trankle's estate, Leonard McKinney. The letter was typewritten except for the signature, "Jr.", which was Del Kabrich's nickname. In the course of his investigation, counsel for the respondent discovered the letter and obtained it from Mr. McKinney. He then sent copies to the court and appellant's attorney, and notified them of his intent to introduce the letter into evidence at trial. Counsel for appellant then retained a handwriting expert, who on the date of trial, confided to Peterson's attorney that he believed the letter to be a forgery. Peterson's attorney then withdrew the letter as one of plaintiff's exhibits, and counsel for appellant instead entered the letter into evidence. The expert then testified that "based on his analysis of the two characters "Jr.", the letter was a forgery.

It is appellant's contention that respondent Dona Peterson attempted to present the court with a forgery, thereby indicating that she originally intended the transfer of her funds to buy the Lewistown property to be a gift. We note that there was no proof introduced at trial indicating any connection between Peterson and the forged letter. And in fact, it was the appellant, and not respondent, who

10

presented the court with the January 10, 1981 letter. The trial court was obviously not impressed with appellant's contention in this regard, as it found a resulting trust to have arisen in favor of Dona Peterson. We are bound here to follow the conclusion of the trial judge, who had the opportunity to observe the conduct and demeanor of the witnesses on the stand. Poepping, 138 Mont. at 44, 353 P.2d at 329; McQuay, 81 Mont. at 320-321, 263 P. at 686. There is substantial evidence of record to support the determination by the trial court that no gift was made by the respondent in this case. Poepping, 138 Mont. at 43, 353 P.2d at 328.

We therefore affirm the judgment of the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

11